[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 1.]

CINCINNATI BAR ASSOCIATION *v*. SELNICK.

[Cite as *Cincinnati Bar Assn. v. Selnick*, 2001-Ohio-6974.]

*Attorneys at law—Misconduct—Permanent disbarment—Neglect of an entrusted legal matter—Failing to seek lawful objectives of client—Failing to carry out contract of employment—Prejudicing or damaging client during course of professional relationship—Failing to render appropriate accounts to client—Failing to promptly pay or deliver to client funds, securities, or other property client is entitled to receive—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Failing to comply with known local customs of courtesy or practice of the bar or particular tribunal without giving notice—Engaging in undignified or discourteous conduct which is degrading to a tribunal—Intentionally or habitually violating any established rule of procedure or of evidence—Engaging in conduct adversely reflecting on fitness to practice law—Handling a legal matter which attorney knows or should know he is not competent to handle—Engaging in conduct prejudicial to the administration of justice.*

(No. 01-798—Submitted August 28, 2001—Decided December 19, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-32.

————————————

**ALICE ROBIE RESNICK, J.**

{¶ 1} On September 18, 2000, relator, Cincinnati Bar Association, filed an amended complaint charging respondent, Robert Bruce Selnick of Cincinnati, Ohio, Attorney Registration No. 0034372, with numerous violations of the Code of Professional Responsibility, based on twelve grievances. Relator and respondent

entered into lengthy and detailed stipulations regarding the facts of the violations and agreed that multiple violations had occurred. The parties stipulated to an immediate indefinite suspension of respondent's license to practice law and later agreed that an indefinite suspension was also the appropriate penalty in the disciplinary proceeding against respondent.

{¶ 2} The parties' stipulations covered the following matters, including the following violations:

{¶ 3} The parties stipulated that respondent violated DR 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 7-101(A)(1) (a lawyer shall not fail to seek the lawful objectives of a client), 7-101(A)(2) (a lawyer shall not fail to carry out a contract of employment), 7-101(A)(3) (a lawyer shall not prejudice or damage a client), 9-102(B)(3) (a lawyer shall render appropriate accounts to a client), and 9-102(B)(4) (a lawyer shall promptly pay or deliver to a client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive) in his representation of Michael and Kim Roy in seeking emergency custody of their infant grandchild. The Roys' grievance involved respondent's failure to appear for a pretrial conference (resulting in the dismissal of their case) and respondent's failure to timely respond to their request for an itemized accounting and the return of the unused portion of the retainer when they terminated respondent's representation.

{¶ 4} The parties stipulated that respondent violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), 9-102(B)(3), and 9-102(B)(4) in his representation of Christopher and Jessica Hamilton in custody and visitation matters involving Christopher Hamilton's daughter. The Hamiltons' grievance involved respondent's failure to take several actions in support of their case (including some actions they specifically instructed him to take), respondent's failure to return the case file, and respondent's failure to

2

return the unused portion of the retainer and to supply an itemized account statement after they terminated respondent's representation.

**{¶ 5}** The parties stipulated that respondent violated DR 6-101(A)(3), 9-102(B)(3), and 9-102(B)(4) in his representation of William H. Clark, Jr., in clarifying details that arose subsequent to Clark's divorce. Clark's grievance involved respondent's failure to take action on his case and respondent's failure to return the case file and retainer after Clark terminated respondent's representation.

**{¶ 6}** The parties stipulated that respondent violated DR 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), 9-102(B)(3), and 9-102(B)(4) in his representation of Scott Roberts in a dissolution of marriage that subsequently became a divorce proceeding and in matters involving the removal of Roberts's three children from his wife's home by a children's services agency. Roberts's grievance involved respondent's failure to provide an accounting and respondent's failure to refund any unused portion of the retainer after Roberts terminated respondent's representation.

**{¶ 7}** The parties stipulated that respondent violated DR 7-106(C)(5) (a lawyer shall not fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving notice), 7-106(C)(6) (a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal), 7-106(C)(7) (a lawyer shall not intentionally or habitually violate any established rule of procedure or of evidence), and 9-102(B)(3) in his representation of Christopher Grigsby in a divorce. Grigsby's grievance involved respondent's failure to collaborate with Grigsby's wife's attorney, as he had agreed to, in preparing an entry detailing the settlement of the divorce case, and respondent's failure to appear on Grigsby's behalf at court proceedings. Grigsby's grievance also involved respondent's failure to provide an itemization of services or to refund any unearned fees after Grigsby terminated respondent's representation.

**{¶ 8}** The parties stipulated that respondent violated DR 6-101(A)(3), 9-102(B)(3), and 9-102(B)(4) in his representation of William Harper, Sr., in divorce and custody matters. Harper's grievance involved respondent's failure to provide an itemized bill, respondent's failure to provide an accounting, and respondent's failure to refund the unused portion of Harper's retainer after Harper terminated respondent's representation.

**{¶ 9}** The parties stipulated that respondent violated DR 1-102(A)(4), 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), 6-101(A)(1) (a lawyer shall not handle a legal matter which he knows or should know that he is not competent to handle), 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), and 7-101(A)(3) in his representation of Michael and Olivia Harris in a personal injury claim against two defendants in a Kentucky court arising from injuries suffered by Mrs. Harris while she was a passenger in an automobile involved in an accident on a bridge over the Ohio River. The Harrises' grievance involved respondent's failure to inform them that in order to pursue their claims he would have to affiliate with a licensed Kentucky attorney, since he was not licensed in Kentucky, respondent's failure to take steps necessary to further the suit (including failure to make a good faith effort to serve one of the defendants and failure to perfect service on the other defendant), respondent's failure to return their telephone calls, and respondent's failure to return the entire case file because he had lost part of it after the Harrises terminated his representation. Respondent's malpractice insurer paid $7,500 to settle the Harrises' claims against respondent.

**{¶ 10}** The parties stipulated that respondent violated DR 1-102(A)(4), 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), 1-102(A)(6), 6-101(A)(1), 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), 7-106(C)(5), 7-106(C)(6), 7-106(C)(7), and 9-102(B)(3) in his representation of Judy and Don Miller in a case based on Judy Miller's claim

for wrongful discharge by her former employer. This grievance involved respondent's failure to comply with court orders, respondent's failure to inform the Millers that the case had been dismissed without prejudice for failure to prosecute, respondent's failure to properly serve the defendant when the case was refiled, respondent's failure to file an affidavit to support his argument that service had been achieved, respondent's failure to inform the Millers that the case had once again been dismissed without prejudice, respondent's attempt to mislead the Millers about his failure to refile their case, respondent's failure to respond to a motion to dismiss after he refiled the case, and respondent's failure to appear several times in court, including once after a trial judge explicitly ordered him to appear.

{¶ 11} The parties stipulated that respondent violated DR 1-102(A)(5), 1-102(A)(6), 6-101(A)(1), 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), 7-106(C)(5), 7-106(C)(6), 7-106(C)(7), and 9-102(B)(3) in his representation of Don Miller in a wrongful discharge action involving his former employer. This grievance involved respondent's failure to respond to a show cause order based on an alleged failure of service with a resulting dismissal without prejudice, respondent's failure to answer interrogatories, respondent's failures to respond to several motions to dismiss that were based on his failure to respond to discovery requests (for which respondent was sanctioned by the court), respondent's failure to respond to a motion to compel the mental examination of Mr. Miller, respondent's failure to respond to other motions, respondent's failure to respond to a motion for summary judgment that was subsequently granted by the trial court, respondent's alleged failure to properly serve the employer with a motion to set aside the judgment, respondent's failure to reply to a memorandum in opposition to the motion to set aside the judgment, and respondent's failure to respond to other matters in the case. The trial court denied the motion to set aside the judgment,

pointing to respondent's inaction and failure to comply with court orders in its decision.

{¶ 12} The parties stipulated that respondent violated DR 9-102(B)(4) in his representation of Angela S. Rosenbalm in three separate matters, two involving injuries to her minor son and the other a pro bono representation of Rosenbalm in her divorce. The grievance involved respondent's failure to return calls or to meet with Rosenbalm, respondent's loss of Rosenbalm's files, respondent's refusal to release the case files to Rosenbalm's new attorney after she terminated respondent's representation until Rosenbalm signed a release, respondent's failure to meet with the new attorney after the release was signed and continuing failure to return the files, and respondent's failure to respond to the new attorney's attempt to have the trial court order that the files be surrendered.

{¶ 13} The parties also stipulated to the details of grievances filed against respondent by two additional former clients, Kevin Woodruff and Janet G. Lee. However, no violations were stipulated to relative to those grievances. Woodruff's grievance involved respondent's failure to appear at a hearing, and respondent's failure to serve Woodruff's wife with a motion related to child support and an earlier separation agreement. Lee's grievance involved her disagreement over the way respondent handled settlement proceeds due her from an auto accident personal injury suit in which respondent represented her. The parties stipulated that respondent's malpractice insurer paid over $100,000 to settle Lee's lawsuit against respondent, alleging that respondent had improperly retained the settlement proceeds.

{¶ 14} The parties' stipulations in the Roy, Hamilton, Clark, Roberts, Grigsby, Harper, Judy Miller, Don Miller, Woodruff, and Lee matters all included individual stipulations that collectively indicated that the balance in respondent's client trust account fluctuated greatly during the course of respondent's representations of these clients, and that there rarely were sufficient funds in the

account to reflect money (such as retainer fees and settlement proceeds) that respondent collected from or on behalf of his clients that should have been in the account.

{¶ 15} As a part of the stipulation process, respondent agreed that he would inventory and return all files to his clients within sixty days. He also committed to providing an accounting on all client files within sixty days of the date of his disciplinary hearing.

{¶ 16} A hearing was held before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court on February 23, 2001. After the hearing, the panel adopted the stipulations entered into by the parties as its findings of fact and conclusions of law. However, the panel rejected the stipulated penalty of an indefinite suspension and recommended that respondent be permanently disbarred from the practice of law.

{¶ 17} In reaching its recommendation, the panel determined that "respondent handled client funds and his professional responsibilities under the principle that he did whatever he needed to do according to his own rules and perceptions. He got into more and more financial trouble while attempting to handle an ever-increasing volume of clients without adequate staff." In addition, the panel remarked that respondent "does not really believe that he did anything wrong in his misuse of client funds. His basic sense of right and wrong appears to be missing."

{¶ 18} The board adopted the findings, conclusions, and recommendations of the panel.

{¶ 19} In his objections to the board's report filed with this court, respondent presents three arguments:

"1. The sanction recommended, permanent disbarment from the practice of law, does not fairly serve the purposes underlying disciplinary proceedings;

"2. The sanction recommended is unduly and unreasonably harsh, is not supported by the record before the Board or the recent pronouncements of this Court and does not take into account all of the mitigating factors warranting indefinite suspension; and

"3. The sanction recommended contravenes the spirit and intent of recently enacted Gov.Bar R. V(11) [*sic*, see below] by imposing a harsher one than that agreed-upon by Relator and Mr. Selnick."

{¶ 20} In his objections, respondent strongly disagrees with the panel's determinations regarding his demeanor observed at the hearing and the panel's conclusions about his failure to accept responsibility for his actions. Respondent argues that he has exhibited remorse for his actions and has taken responsibility for his failures, including expressing a desire to make restitution and to return his clients' files. Furthermore, respondent points to mitigating factors, including that he has no prior disciplinary record and that he cooperated in the disciplinary process and stipulated to his wrongdoing. In addition, respondent asserts that he has suffered from severe back pain and was for a period of time overmedicated with OxyContin, that he was at one time on methadone to treat his addiction, and that he continues to battle the effects of that overmedication.

{¶ 21} In support of his third argument, respondent cites what he asserts is recently promulgated Gov.Bar R. V(11) ("Consent to Discipline"), states that it was effective May 1, 2001, acknowledges that it is inapplicable to his case, and argues that he is being penalized for proceeding in accordance with the spirit of that rule. However, it is apparent that respondent is actually relying on BCGD Proc.Reg. Section 11 (identifiable in full as Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court), titled "Consent to Discipline." (These rules appear at Appendix II to the Rules for the Government of the Bar in the Rules of Court/Miscellaneous Rules Volume of

Baldwin's Ohio Revised Code Annotated; new Section 11 is in 2001 Ohio Legislative Service No. 3. The rules appear after the text of Gov.Bar R. V in the volume containing Title 19 of Page's Ohio Revised Code Annotated; new Section 11 is in Page's 2001 Bulletin No. 1. See, also, *<http://www.sconet.state.oh.us/Rules/boc/>.*)

{¶ 22} Although misidentifying the rule, respondent correctly cites the rule's text and is correct that Section 11 was effective May 1, 2001. In particular, for respondent's purposes, BCGD Proc.Reg. Sections 11(C) and (D) provide that if a relator and a respondent in a disciplinary case agree upon a sanction to be imposed for admitted misconduct and if either the hearing panel or the board does not accept the agreement, the respondent is then entitled to a hearing pursuant to BCGD Proc.Reg. Section 9 ("Time Guidelines for Pending Cases") in the proceedings against him or her, and the stipulated sanction is vacated. Respondent in essence urges that because the panel and board rejected the stipulated sanction of an indefinite suspension, the stipulations should be discarded and this disciplinary proceeding should be resumed as if no stipulations had been entered into.

{¶ 23} Relator's answer brief to respondent's objections sets forth the following proposition of law:

"Where the parties have stipulated findings of fact and conclusions of law, and jointly recommended a sanction of indefinite suspension, but respondent's circumstances have worsened appreciably and the board found a lack of mitigation in the face of aggravating factors, this court retains final authority to set an appropriate sanction."

{¶ 24} Relator states that as of the date of its brief, respondent failed to return client files or provide an accounting regarding money he owed to his clients, despite his commitment to do so within sixty days of the panel hearing, and had failed to comply with his commitment to work to provide restitution to clients. As to respondent's chemical dependency, relator emphasizes that the board found that

respondent was "unwilling to attribute any of his professional problems to his physical problems." Relator (like respondent, misidentifying the rule that respondent cites) points out that respondent acknowledges that the recently adopted rule on stipulated sanctions is inapplicable to his case and urges that respondent's misuse of client funds and substantial pattern of neglect warrant disbarment.

{¶ 25} After this case was briefed by the parties, respondent filed a motion to supplement the record, which was ultimately allowed by this court. See 93 Ohio St.3d 1424, 755 N.E.2d 349. The supplement indicates that respondent has been undergoing treatment at Bethesda Oak Hospital, and "has been documenting all of his AA attendance." Respondent states that "this additional information demonstrates Mr. Selnick's addiction to Oxycontin and his course of treatment." This supplement also contains statements of accountings that respondent has provided to some of his former clients. The supplement also states that respondent has obtained the funds to begin providing restitution to eleven named former clients, some of whom are mentioned in the stipulations detailed above, and lists the amounts of restitution to be provided to each.

{¶ 26} In response to respondent's supplement of the record, relator moved this court for leave to file its own supplementation of the record. After this court granted the motion (see 93 Ohio St.3d 1424, 755 N.E.2d 349), relator supplemented the record with further information. Relator's supplement indicates that, on June 13, 2001, respondent was indicted in the Court of Common Pleas of Hamilton County on two counts of illegal processing of drug documents in violation of R.C. 2925.23(B), related to "false or forged prescriptions" for OxyContin, a Schedule II drug. At oral argument before this court, respondent's attorney stated that respondent was then in a drug diversion program in connection with the indictment and would avoid prosecution upon the successful completion of that program.

{¶ 27} Relator's supplement to the record also indicates that on September 4, 2001, a probate court judge in Hamilton County adopted a magistrate's decision

and surcharged respondent $13,200 for failing to provide funds on behalf of a client whose settlement proceeds had been placed in respondent's client trust account. The surcharge was reduced to a judgment in favor of the client, and the matter was referred to the Hamilton County Prosecuting Attorney. The magistrate and the probate judge found that respondent claimed that he had deposited the full settlement into his client trust account and that "the bank appropriated those funds for certain of Bruce Selnick's outstanding commitments." The magistrate and probate judge found that respondent had an absolute duty, once he accepted the proceeds from the injury settlement for his client, to pay creditors as ordered by the court and to deposit the remainder for the benefit of the injured party, and further found that respondent "failed to maintain these funds as required by the Court and is guilty of embezzlement pursuant to R.C. 2109.52."

{¶ 28} Relator's supplement to the record also indicates that on July 13, 2001, Angela Rosenbalm, a grievant in this proceeding, was granted a default judgment against respondent in her action against him in the Court of Common Pleas of Hamilton County and was awarded permanent possession of her divorce file and her minor son's personal injury files and costs.

{¶ 29} Relator's supplement to the record also indicates that an additional amended complaint, based on grievances filed against respondent by thirteen clients or former clients, is pending against respondent. These grievances were not before the panel when it conducted the hearing in the instant proceeding. The grievances of the thirteen clients or former clients in this additional complaint are distinct from the grievances detailed above in the instant proceeding. Many of these additional grievances involve respondent's neglect of client matters, making false representations to clients about work he failed to do, and failing to disperse to his clients settlement proceeds he received on their behalf. Many of the additional grievances also involve respondent's failure to return client files, failure to submit itemized statements, and failure to return unused portions of retainers to clients who

terminated his representation. The disposition of the case before us is not dependent upon the foregoing pending allegations.

{¶ 30} After considering the relevant matters that were considered by the panel and board, we adopt the findings, conclusions, and recommendation of the board. Respondent engaged in a pervasive pattern of neglect of client matters, failure to respond to court orders, deceit, misuse of client funds through his client trust account, and failure to return client files or provide accountings despite numerous requests and opportunities to do so, causing substantial injury and great inconvenience to many clients.

{¶ 31} Although it is possible that respondent's substance abuse played a significant role in his problems, he declined to rely on that ground in the hearing before the panel and failed to develop a sufficient record in mitigation. Respondent claims that his failure to develop a record was based on a belief that by entering into stipulations, the parties obviated the need for a record to be developed. However, as to respondent's asserted reliance on the terms of BCGD Proc.Reg. Section 11, respondent admits that the provisions of that rule did not apply to his disciplinary proceeding, which was held before the rule's effective date. Therefore, respondent assumed the risk of any reliance on the rule, and his complaints about the unfairness of his situation must fail.

{¶ 32} Furthermore, on its face, BCGD Proc.Reg. Section 11 has no application to the stipulated sanction in this case. BCGD Proc.Reg. Section 11(B) was promulgated by the board under authority of Gov.Bar R. V(11)(A)(3)(c), which expressly *exempts* indefinite suspensions and disbarments from the ambit of the rule. In addition, the term "sanction" as used in BCGD Proc.Reg. Section 11 is expressly defined in subsection (A)(2) as any of the sanctions listed in Gov.Bar R. V(6)(B)(3), (4), and (5), which comprise sanctions ranging from a maximum of a suspension for two years to a public reprimand. References to Gov.Bar R. V(6)(B)(1) (disbarment) and V(6)(B)(2) (indefinite suspension) are notably absent

from the definition of "sanction" in BCGD Proc.Reg. Section 11(A)(2), and so stipulations to those sanctions are not within the scope of Section 11. Therefore, to the extent that respondent maintains that he was relying on the spirit of the terms of BCGD Proc.Reg. Section 11 in stipulating to a sanction of indefinite suspension, his reliance was totally misplaced.

{¶ 33} Finally, any mitigation value in respondent's cooperation in stipulating to numerous violations is offset by his failure to return client files and provide accountings while this case has been pending. Although the supplemented record indicates that respondent has been attempting to sort out some of his problems with former clients, respondent has fallen far short of the commitment he made at the time of his hearing before the panel to return files and to conclude his bookkeeping problems and to make restitution to former clients. It is apparent that many of these problems remain unresolved, causing further substantial hardships to a large number of his many former clients who were the victims of his deficient representation.

{¶ 34} Respondent is hereby permanently disbarred from the practice of law in the state of Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Naomi C. Dallob, Sue Livensparger* and *Gates T. Richards,* for relator.

*Dinsmore & Shohl, L.L.P., Mark A. Vander Laan* and *Bryan E. Pacheco,* for respondent.

_____