[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 490.]

CLEVELAND BAR ASSOCIATION *v*. DIXON.

[Cite as *Cleveland Bar Assn. v. Dixon*, 2002-Ohio-2490.]

*Attorneys at law—Misconduct—Permanent disbarment—Fifteen distinct violations of the Disciplinary Rules during the administration of an estate—Failing to cooperate in a disciplinary investigation.*

(No. 2001-1631—Submitted January 8, 2002—Decided June 12, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-85.

_____

COOK, J.

{¶1} This cause is before the court upon the filing of a certified report by the Board of Commissioners on Grievances and Discipline ("board") recommending that we sanction the respondent, Debra J. Dixon of Cleveland, Ohio, Attorney Registration No. 0060090, for acts violating numerous Disciplinary Rules and for initially failing to cooperate in the disciplinary investigation. The board recommends that we indefinitely suspend Dixon from the practice of law in Ohio. For the reasons that follow, we decline to follow the board's recommendation and instead disbar Dixon.

I

{¶2} The parties entered into detailed factual stipulations that formed the basis for the panel report, which in turn formed the basis of the board's certified report to this court. These stipulations indicate that in September 1996, Dixon began to represent Bertha Heim, both individually and as the administrator of the estate of Heim's deceased husband, Otto. Dixon also represented Heim's son for limited purposes. During the course of her relationship with Heim, Dixon obtained power of attorney, which Dixon used to sign probate documents and to transfer both probate and non-probate funds or assets.

*Neglect*

**{¶3}** Dixon admits that she lacked the experience to handle the probate matter. Among other errors, she failed to identify accurately funds valued at $33,950.65; failed to file accurate accounts in a timely fashion, resulting in a citation against Heim; failed to deliver assets to beneficiaries in a timely fashion; and failed to provide full information in a timely fashion to both the court and her client. Eventually, a probate court magistrate judge contacted the Cleveland Bar Association over concerns that Heim had expressed to him about Dixon's usurping estate assets valued between $200,000 and $500,000 and about a potential conflict of interest arising from Dixon's representing the estate, of which both Heim and her son were beneficiaries, while also representing Heim personally.

**{¶4}** The parties stipulated that Dixon's conduct violated DR 6-101(A)(1) (a lawyer shall not handle a legal matter that she knows or should have known she is not competent to handle without associating herself with a lawyer who is competent to handle it), 6-101(A)(2) (a lawyer shall not handle a legal matter inadequately), 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 7-101(A)(2) (a lawyer shall not fail to carry out a contract of legal employment with a client for professional services), and 7-102(A)(3) (a lawyer shall not knowingly fail to disclose that which the law requires to be revealed).

*Failure to Account for Fiduciary Funds*

**{¶5}** In the course of the attorney-client relationship, Dixon had assumed nearly total control over all assets belonging to the estate and to Heim. The parties stipulated that Dixon's mishandling of the assets violated DR 9-102(B)(2) (failure to label all assets properly), 9-102(B)(3) (failure to render appropriate accounts to

the client), and 9-102(B)(4) (failure to pay or deliver to the client promptly property that was in lawyer's possession).[1]

*Improper Transfers of Fiduciary Funds*

{¶6} In the second month of her representation of Heim, Dixon opened a joint and survivorship checking account in both their names. Although Dixon used this account to receive various fiduciary monies and to pay fiduciary bills, Dixon also withdrew $252,406.80 from that account for her own use. Exhibits accompanying the stipulations show that Dixon had written several checks payable to "Cash." Another was payable to a university scholarship fund, while yet others were payable to relatives of Dixon. Although Dixon periodically reimbursed the account, she twice deposited her own funds into the account and identified them as "loans," even though Heim did not require such loans.

{¶7} The parties stipulated that Dixon's conduct violated DR 9-102(A) (commingling funds), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law), and 7-101(A)(3) (intentionally prejudicing or damaging her client in the course of their professional relationship).

{¶8} During her second year of representing the estate and Heim, Dixon transferred $110,000 from Heim's assets to Dixon's brother and another individual. The two men used the money to purchase real property. Dixon prepared a promissory note and open-ended mortgage for the transaction that identified the lender as "Bertha Heim c/o her Attorney, Debra J. Dixon." The stipulations state that Dixon "admits she has no records evidencing disclosure of this loan to Bertha

---

1. The board report describes DR 9-102(B)(2) as prohibiting Dixon's failure to render an appropriate account to Heim in a timely fashion, while describing DR 9-102(B)(3) as prohibiting Dixon's failure to label all assets properly. The board has switched the Disciplinary Rules. Our independent evaluation of the case corrects this clerical error.

Heim." The parties stipulated that Dixon's conduct violated DR 5-105 (representing conflicting interests).

{¶9} Upon reaching a settlement with the estate's conservator, who had filed a concealment of assets action, Dixon repaid that portion of the principal that she had not already redeposited, paid interest on the principal, and paid the conservator's attorney's fees.

*Charging an Excessive Fee*

{¶10} By two payments in February and June 1997, Dixon paid herself a total of $15,000 from non-probate funds. Dixon recorded the payments as "funds management." Later, during the course of the conservator's legal action against her, Dixon submitted a fee invoice in the amount of $18,205 plus additional expenses. As part of the settlement agreement, Dixon waived payment of her fees. The parties stipulated that Dixon attempted to charge an excessive fee in violation of DR 2-106(A).

*Failure to Cooperate with Disciplinary Investigation*

{¶11} The Cleveland Bar Association first notified Dixon in February 1999 of a grievance against her. Despite repeated requests by the bar association, Dixon failed to provide full information for months. Finally, following the estate conservator's filing of the civil action against Dixon, Dixon retained counsel who facilitated Dixon's cooperation with the disciplinary investigation. The parties stipulated that Dixon's conduct constitutes misconduct under Gov.Bar R. V(6)(A)(1) in that she failed to cooperate as required by Gov.Bar R. V(4)(G).

{¶12} The matter proceeded to a hearing before a board panel. At the hearing, the bar association confirmed that it was withdrawing other alleged violations that were not resolved by stipulation, as well as an amended complaint that it had filed alleging additional violations. After hearing mitigation testimony, the panel adopted the parties' stipulations as its findings of fact and conclusions of

law and recommended an indefinite suspension. The board then adopted the findings, conclusions, and recommendation of the panel.

{¶13} Dixon now objects to a portion of the board's findings and to a condition of the recommended sanction.

## II

{¶14} With one exception, Dixon does not object to the factual findings and conclusions adopted by the board. Nor does she suggest that the imposition of an indefinite suspension is unwarranted in light of her admitted violations of numerous Disciplinary Rules. Rather, Dixon urges this court to find that mental illness contributed to her misconduct and to permit her to apply for reinstatement from indefinite suspension upon a determination by mental health professionals that she is fit to resume the practice of law rather than upon the expiration of Gov.Bar R. V(10)(B)(1)'s two-year waiting period. We need not address Dixon's argument regarding early reinstatement from an indefinite suspension, however, because the facts of this case warrant disbarment.[2]

{¶15} Because misappropriation of client funds is among Dixon's acts of admitted misconduct, we must begin our consideration with the presumptive sanction of disbarment. See *Disciplinary Counsel v. Wise* (1999), 85 Ohio St.3d

---

2. **{¶a}** As noted, the parties stipulated to the recommended sanction of an indefinite suspension, which both the panel and the board found appropriate. At first blush, our departure from the board's recommended sanction would therefore appear to necessitate a remand in this case pursuant to Gov.Bar R. V(8)(D):

**{¶b}** "After a hearing on objections, * * * the Supreme Court shall enter an order as it finds proper. If the Court rejects the sanction contained in a certified report submitted pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline, *the Court shall remand the matter to the board for a hearing*." (Emphasis added.)

**{¶c}** No remand is required. This court has previously explained that "stipulations to [an indefinite suspension or disbarment] are not within the scope of Section 11 [of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline]." *Cincinnati Bar Assn. v. Selnick* (2001), 94 Ohio St.3d 1, 9, 759 N.E.2d 764 ("Gov.Bar R. V[11][A][3][c] * * * expressly *exempts* indefinite suspensions and disbarments from the ambit of [Section 11]." Emphasis sic.). Because the board's certified report was not submitted pursuant to Section 11, Gov.Bar R. V(8)(D) is inapplicable.

169, 171, 707 N.E.2d 852.  See, also, *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993; *Disciplinary Counsel v. Connaughton* (1996), 75 Ohio St.3d 644, 645, 665 N.E.2d 675.  "However, on some occasions because of mitigating circumstances, we have given weight to a board recommendation of a lesser sanction."  *Wise*, 85 Ohio St.3d at 171, 707 N.E.2d 852, citing *Disciplinary Counsel v. Kurtz* (1998), 82 Ohio St.3d 55, 693 N.E.2d 1080.  In considering whether such sufficient mitigating circumstances exist, we are guided by Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.  *Disciplinary Counsel v. Medley* (2001), 93 Ohio St.3d 474, 477, 756 N.E.2d 104.

{¶16} Dixon posits that an indefinite suspension would be an appropriate lesser sanction because numerous Section 10 mitigating factors exist in this case: the absence of a prior disciplinary record; evidence of her otherwise good character and good works; the fact that the misconduct was limited to a single representation; her mental illness, which she labels as a "significant contributing factor" to her dishonesty and which she is making an effort to overcome; and the fact that she made "full restitution prior to any court ordered compulsion to do so."  The panel and board found the presence of several of these mitigating factors, including restitution, no prior discipline, and positive character witnesses.

{¶17} We agree that a lack of prior discipline and the fact that Dixon's misconduct was limited to single representation constitute some mitigation.  See Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. We also accord some weight to Dixon's character references.  But for the following reasons, we find Dixon's claim to each remaining mitigating factor less compelling.

*Mental Illness*

{¶18} Although Section 10(B)(2) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on

Grievances and Discipline does not explicitly reference mental illness as a mitigating factor, Section 10(B) of that rule requires consideration of "all relevant factors" in determining an appropriate sanction for misconduct. We have historically considered an attorney's mental state in determining an appropriate sanction for misconduct. *Glatki*, 88 Ohio St.3d at 384, 726 N.E.2d 993.

**{¶19}** Here, both the panel and the board explicitly *rejected* the existence of Dixon's psychological issues as a mitigating factor. The board specifically found that Dixon's psychological problems were "peripherally related" to her misconduct and concluded that Dixon's "mental state did not cause and does not justify her dishonest conduct." "While this court is not bound by the findings of fact of the board and panel, we give them some deference in light of the reality that the panel observed the witnesses firsthand." (Citation omitted.) *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 198, 754 N.E.2d 235. We have independently reviewed the testimony and written report of the clinical and forensic psychologist that Dixon presented on her behalf. Both contain evidence of unfortunate circumstances in Dixon's history that have resulted in mainly personality and interpersonal relationship difficulties. Neither, however, contains a sufficiently compelling causal link between Dixon's stated psychological issues and her misappropriation of over $250,000. Accordingly, we decline to credit Dixon's claim to mitigation in this regard.

*Restitution*

**{¶20}** We discount the mitigating value of Dixon's having made "full restitution prior to any court ordered compulsion to do so." Though the board found Dixon's restitution to constitute a mitigating factor, the board also found the *circumstances* behind the restitution to constitute an *aggravating* factor. We agree. While Dixon had indeed made restitution before a court ordered her to do so, she completed it well over a year after learning of the grievance—and only *after* the conservator of the estate of Otto Heim had initiated legal action to reclaim the

misappropriated funds, *after* the conservator had issued a *subpoena duces tecum* requiring Dixon to produce records of the accounts, securities, and other assets held by the estate and Bertha Heim, and *after* Dixon had retained counsel and negotiated a settlement in which she paid the estate $151,960.50 in exchange for a release of all claims against her.

**{¶21}** Despite the delay in making restitution, Dixon testified before the panel that she had promptly paid the $151,960.50 to the estate upon the conservator's determination of the total amount of principal, interest, and conservator fees due, implying that she acted timely and in good faith. Yet, given her firsthand knowledge of how much money she had misappropriated, Dixon could have, and should have, repaid the monies owed to the estate (except the conservator's fee) even prior to completion of the *conservator's* calculation. Dixon's delayed payment therefore constitutes less than a "timely good faith effort to make restitution or to rectify consequences of misconduct." Section 10(B)(2)(c) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Although Dixon's having made restitution provides *some* mitigation, the circumstances surrounding the repayment determine its weight.

*Remorse*

**{¶22}** In addition to those mitigating factors set forth above, the board also cited as mitigating Dixon's expression of remorse for her conduct. Dixon, however, does not assert remorse in her list of mitigating factors to this court. We note nonetheless that Dixon testified before the board that "words cannot describe" her degree of remorse and that she feels "ashamed for having marred   * * * one of the most honorable professions around."

**{¶23}** We also note that Dixon testified that she had "never meant, under any circumstances, to harm Mrs. Heim. On the contrary, [Dixon's] goals and      * * * motivations for getting involved were to help her." Further, Dixon testified that

8

she had never intended to deprive Bertha Heim of her money or property, and that she recognizes that the problem in making the loan to her brother was that "[a]s a practical matter and for ethics purposes [she] was representing both sides of a transaction."

{¶24} Dixon is correct in identifying issues related to representing both sides of a transaction—if we accept for the sake of argument that making a loan without Heim's knowledge constitutes "representing" the client. But Dixon fails to acknowledge the deeper nature and severity of her misconduct. The panel found that "[n]o disclosure of this loan was made to Bertha Heim." The board in turn adopted this factual finding, and Dixon does not object to the finding here. By acknowledging *only* the conflict of representing both sides in the loan, Dixon has failed to identify the larger issue: *the money was never hers to lend in the first place*.

{¶25} Similarly, Dixon's expression of remorse is undercut by the confusion that Dixon exhibited as to whether she believes that she had indeed initially charged an excessive fee. First, she testified that her $18,651 fee was *not* excessive for the labor and services that she rendered. Dixon then testified that she had agreed to the stipulation because she realized that she "had botched from top to bottom the Heim matter. * * * [T]he reason that I agreed to that particular stipulation was I guess a fundamental belief that if you don't provide services in a meaningful [manner], one that advances the cause of the client, it is excessive. Anything is excessive." Such contradictory testimony highlights Dixon's inability to identify and appreciate the full scope of her errors.

{¶26} Further, the bar association argues in its brief that "Dixon's request to be considered for readmission in less than the two-year period proscribed [sic] by Gov.Bar R. V(10)(B) raises the serious question whether she truly appreciates the degree to which she violated the Code of Professional Responsibility, abused a client's trust, and abused the public's trust." In her objections to this court, Dixon continued to seek potential early reinstatement, even after both the panel and the

board had rejected Dixon's attempt on the basis that it would "not impose an adequate penalty for [her] intentional dishonesty." We agree that the bar association raises a legitimate concern that, coupled with our recognition of Dixon's inability to perceive the extent and nature of her misconduct, supports our finding that Dixon has failed to acknowledge the wrongful nature of her conduct in regard to the misappropriation and in attempting to charge an excessive fee. See Section 10(B)(1)(g) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. This aggravating factor offsets Dixon's incomplete expression of remorse.

III

**{¶27}** Against the foregoing mitigating factors of varying persuasiveness, we weigh Dixon's admitted misconduct comprising fifteen distinct violations of the Disciplinary Rules and a violation of her duty to cooperate in the investigation. We find that the mitigating factors present in this case fail to warrant a lesser sanction than disbarment. We have held that in most instances, "[t]he continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897. Misappropriation was but *one form* of Dixon's misconduct. As the board correctly explained, Dixon "has committed disciplinary rule violations involving incompetence, neglect, dishonesty and misrepresentation involving commingling and misappropriation of a client's funds, an attempt to charge an excessive fee, and failure to cooperate initially in the disciplinary process until she was advised to do so by retained counsel." Dixon's mitigating circumstances inadequately offset the more compelling interest of protecting the public.

**{¶28}** This court hereby disbars Dixon from the practice of law. Costs are taxed to Dixon.

Judgment accordingly.

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent and would indefinitely suspend respondent.

————————————

Brouse McDowell and Virginia Brown; Baughman & Associates and Eileen M. Joyce, for relator.

Gold, Schwartz & Company, L.P.A., and Niki Z. Schwartz; Charles W. Kettlewell, for respondent.

————————————