OPINION
{¶ 1} In this opinion, we address thirty-four cases. These cases have not been officially consolidated, but they are all appealed by the same party and contain a common subject. They come for consideration upon the records in the trial court, Appellant's briefs, and their oral arguments before this court. In these appeals, Appellant, Goldberg, Persky, Jennings White, P.C., appeal the decisions of the Mahoning County Probate Court that imposed a sanction against Appellant in the form of reduced attorney's fees.
 {¶ 2} In many of these appeals, the probate court indicated that it was sanctioning Appellant because it delayed forwarding settlement funds to the Administratrix and deposited the funds in a Pennsylvania bank rather than an Ohio bank. In other appeals, the probate court's judgment entry stated that it was sanctioning Appellant for this reason, but its statements at a hearing indicate that it was sanctioning Appellant because settlement funds were not distributed within thirty days. Finally, in one appeal, the trial court clearly indicates that it is sanctioning Appellant because the settlement funds were not distributed in thirty days.
 {¶ 3} It is inappropriate for the probate court to sanction Appellant for these reasons. The sanctions the probate court imposed are not approved by law. Furthermore, the violations it refers to are more appropriately punished by disciplinary proceedings. Finally, it is difficult to see how Appellant's actions prejudiced the estate, so even the probate court's own local rules do not give it authority to sanction Appellant for these actions. Thus, the probate court abused its discretion and its decisions are reversed and modified.
 Facts {¶ 4} The facts underlying each of these appeals are more or less the same. In each case, the personal representative of the estate filed one or more documents with the probate court indicating that there were wrongful death proceedings pending. These claims were all based on the fact that the decedent had developed asbestosis during his lifetime. In each case, Appellant represented the estate in that asbestos-related litigation. And in each case, the probate court approved a 33% contingency fee agreement between Appellant and the estate's personal representative.
 {¶ 5} Appellant entered into numerous partial settlement agreements on behalf of each estate and asked the probate court to approve both those settlements and the attorney's fees and expenses that Appellant claimed. In each case, the probate court approved the partial settlements after a hearing. It also ordered that Appellant be reimbursed for its litigation expenses and fees, but lowered those awards by "penalty interest" in an amount which differed from application to application. In some applications, the probate court reduced Appellant's reimbursement by less than 10% of the fees requested. In others, that reduction was more than 50% of the fees requested.
 {¶ 6} In the vast majority of these cases, those appealed in 2004, either the probate court or its magistrate explained that Appellant's fees were being reduced because "it delayed in forwarding moneys of the Estate to the Administratrix, and unlawfully deposited Estate funds into a Pittsburgh, Pennsylvania area bank account, rather than a local institutional account opened by the Administratrix, pursuant to O.R.C.2109.41. Goldberg, Persky thereby hindered, delayed and obstructed the Administratrix and the administration of this Estate."[1] In most of these 2004 cases, Appellant has failed to provide transcripts of the hearing before the probate court or its magistrate. But Appellant provided transcripts of five of those hearings. Those transcripts make it clear that the probate court is imposing a 10% per annum penalty on any partial settlement funds which were not distributed within thirty days after they were received.
 {¶ 7} In one other case, Case Number 05 MA 20, the probate court's magistrate gives a different explanation for why it sanctioned Appellant. In that entry, the magistrate found that the fees requested were "fair and reasonable," but charged a 10% per year penalty because Appellant "fail[ed] to deposit all the settlement proceeds into a Mahoning County interest bearing restricted account f/b/o the wrongful death beneficiaries within 30 days of receipt."
 {¶ 8} Appellant has timely appealed from each of the judgment entries reducing its attorney's fees and in all but seven of these cases funds are being held in escrow pending this appeal. It has filed a single brief addressing most of these cases and separate briefs addressing a few individual cases. Appellant's arguments in each of those briefs are the same.
 Probate Court's Authority to Impose Sanctions {¶ 9} In the briefs addressing most of the 2004 appeals, Appellant argues the following assignment of error on appeal:
 {¶ 10} "The Probate Court erred by assessing penalty interest against Appellant's attorney's fees."
 {¶ 11} In Case Number 04 MA 70, Appellant's assignment of error argues:
 {¶ 12} "The Probate Court erred by assessing a penalty interest against Appellant's attorney's fees."
 {¶ 13} In Case Number 05 MA 20, Appellant's assignment of error argues:
 {¶ 14} "The Probate Court erred by retroactively assessing a penalty interest against Appellant's attorney's fees."
 {¶ 15} As is obvious by the number of cases involved in this appeal, Appellant is involved in the litigation of numerous asbestos-related claims involving clients located within Mahoning County. This is not the first time Appellant has appealed a decision where the probate court reduced its attorney's fees as a sanction.
 {¶ 16} In another case involving this issue, In re Estate ofCampbell, 7th Dist. Nos. 02 CA 186, 02 CA 187, 2003-Ohio-7040, this same Appellant was representing an estate in asbestos-related litigation and applied for attorney's fees at the conclusion of that litigation. The probate court did not hold a hearing on the application for fees and refused to award Appellant the fees requested, awarding a reduced amount instead. We reversed the trial court's refusal to grant the requested fees. We first reversed the probate court since it did not clearly state the reason why it "elected to reduce the Firm's fees or why the court chose the figures that it did." Id. at ¶ 34. According to this court, the probate court needed to state "precisely why [it] reduced the fees." Id. at ¶ 37. We also stated that the probate court should have held a hearing before reducing the requested fees. Id. at ¶ 38. We then remanded the matter for further proceedings.
 {¶ 17} In In re Estate of Covington, 7th Dist. No. 03 MA 98, 2004-Ohio-3639, this same Appellant again appealed from an order from the Mahoning County Probate Court which awarded a reduced amount of Attorney's fees to Appellant. We stated that the probate court reduced the requested fees as a punishment since Appellant did not disburse settlement funds to the estate attorney within a certain period of time. The probate court's Local Rules arguably gave it the authority to punish Appellant for this delay. However, we concluded that the probate court was improperly applying that Local Rule retroactively. Id. at ¶ 15-16. We further noted that the delay the trial court was punishing Appellant that had nothing to do with the reasonableness of the requested fee. Id. at ¶ 17. Finally, since the trial court found that the fees requested were reasonable, we awarded Appellant those fees instead of remanding the case back to the probate court. We applied Covington in a rather straightforward manner in two subsequent cases, In re Estate of Windsor,
03 MA 184, 2004-Ohio-6213, and In re Estate of Marsteller, 7th Dist. No. 03 MA 185, 2004-Ohio-6214.
 {¶ 18} We were then faced with a somewhat different situation in In reEstate of Traylor, 7th Dist. Nos. 03 MA 253, 03 MA 254, 03 MA 255, 03 MA 256, 03 MA 257, 03 MA 258, 03 MA 259, 03 MA 262, 2004-Ohio-6504, and Inre Estate of Robertson, 159 Ohio App.3d 297, 2004-Ohio-6509. These cases, which are similar to this one in many respects, dealt with eight consolidated cases encompassing the same factual and procedural scenarios. In those cases, the probate court imposed a sanction against the reasonable attorney's fees to which Appellant was required "for a variety of perceived violations of local court rules, Ohio Rules of Superintendence, and rules of professional ethics governing attorneys."Traylor at ¶ 12. Nevertheless, we concluded that the probate court specifically sanctioned Appellant solely because it "fail[ed] to timely deposit proposed settlement funds into a designated bank account in Mahoning County within 30 (or in some cases, 90) days of receipt." Id.
 {¶ 19} We reversed the probate court's decision for a variety of reasons. First, we followed Covington and noted that the probate court could not retroactively apply that Local Rule. Id. at ¶ 17. Second, we held that the probate court had no authority to sanction Appellant for not depositing the funds in the manner specified by the probate court since no written rule of law provided that Appellant had to deposit the funds in that manner. Id. at ¶ 18-21. Third, we held that the probate court could not punish Appellant for failing to transfer the settlement funds to the estate since the probate court had not yet approved of the settlement. Id. at ¶ 27. Fourth, we held that the probate court's actions were usurping the Ohio's Supreme Court's exclusive jurisdiction over disciplinary matters. Id. at ¶ 33-34. Finally, we held that Appellant could not reasonably be sanctioned for failing to deposit the funds in the manner specified by the probate court since the probate court had approved of the procedure Appellant had used in the past and had not notified Appellant of any change in that procedure. Id. at ¶ 36. We reversed the trial court's decision imposing the sanction and awarded Appellant the fees which the trial court had found reasonable.
 {¶ 20} After we entered our opinion in Traylor, the probate court issued an order appointing a local attorney to represent the estate for the express purpose of asking this court to reconsider its opinion and appealing that opinion to the Ohio Supreme Court. That counsel filed a timely application for reconsideration of the Traylor opinion, arguing that our decision was in error since Appellant did not provide transcripts of the hearing conducted before the trial court. We denied the application to reconsider in In re Estate of Traylor, 7th Dist. Nos. 03 MA 253, 03 MA 254, 03 MA 255, 03 MA 256, 03 MA 257, 03 MA 258, 03 MA 259, 03 MA 262, 2005-Ohio-1348. In doing so, we refused to address whether the probate court had the authority to appoint counsel for this purpose and addressed the merits of the application.[2] We concluded that we did not need to have a transcript of the hearings before the probate court in those cases for two reasons. First, we noted that none of the estates filed briefs opposing Appellant's arguments and that App.R. 18(C) allows this court, in that circumstance, to accept Appellant's statement of the facts as correct. We further noted that the record contained "lengthy journal entries issued by the probate court which explain in great detail why the court imposed penalties against Appellant's attorney's fees." Id. at ¶ 10. Appellant's presentation of the facts was reasonable in light of the probate court's judgment entries, thus, we did not need the transcripts to determine whether the probate court erred. Id.
 {¶ 21} Many of the issues raised in this case have all been addressed in the cases described above. First, Appellant has failed to file a transcript of the hearing before the trial court in all but five of these cases. However, none of the Appellees have filed responsive briefs. Thus, we may accept Appellant's statement of the facts as true. App.R. 18(C), since, as in Traylor, the facts appear reasonable in light of the probate court's journal entries here.
 {¶ 22} Second, we have already stated that the probate court cannot sanction Appellant in the manner it has for failing to forward the settlement proceeds to the administrator in the timeframe contemplated by the probate court. The timeframe contemplated by the probate court is not in the probate court's local rules of court and places Appellant in a "Catch-22" scenario. Traylor at ¶ 18, 27. Furthermore, the probate court's actions arguably intrude on the Ohio Supreme Court's exclusive jurisdiction to punish attorneys for violations of their ethical duty to promptly deliver settlement funds to a client. Id. at ¶ 28-33; see alsoCleveland Bar Assn. v. Dixon, 95 Ohio St.3d 490, 2002-Ohio-2490; AkronBar Assn. v. Mudrick, 93 Ohio St.3d 621, 2001-Ohio-1885 (Disciplining attorneys for failing to properly take care of fiduciary funds).
 {¶ 23} Third, as in most of the cases described above, the probate court first concluded what fees were reasonable for each application to approve the partial settlements. It then deducted the "penalty interest" from those reasonable fees. Thus, if we determine that the trial court's decision should be reversed, then we can award the amounts deducted, just as was done in the previous cases.
 {¶ 24} However, we have not directly addressed whether the probate court properly sanctioned Appellant for depositing settlement funds in a Pennsylvania bank rather than an Ohio bank, the reason for the sanction given in the majority of the cases currently on appeal. When reviewing the probate court's decision in this matter, we must remember that the probate court has broad discretion over the payment of reasonable attorney fees and may only reverse its decision if it abuses that discretion. Inre Estate of Fugate (1993), 86 Ohio App.3d 293, 298. A probate court abuses its discretion when awarding attorney fees if its decision is not supported by the record or is contrary to law. In re Keller (1989),65 Ohio App.3d 650, 655.
 {¶ 25} The probate court cites R.C. 2109.41 for the proposition that Appellant should have deposited the settlement funds in an Ohio account rather than a Pennsylvania account. That statute provides:
 {¶ 26} "Immediately after appointment and throughout the administration of a trust, but subject to section 2109.372 of the Revised Code, every fiduciary, pending payment of current obligations of his trust, distribution, or investment pursuant to law, shall deposit all funds received by him in his name as such fiduciary in one or more depositaries. Each depositary shall be a bank or savings and loan association located in this state. A corporate fiduciary, authorized to receive deposits of fiduciaries, may be the depository of funds held by it as such fiduciary. All deposits made pursuant to this section shall be in such class of account as will be most advantageous to the trust, and each depositary shall pay interest at the highest rate customarily paid to its patrons on deposits in accounts of the same class.
 {¶ 27} "The placing of such funds in such depositaries under the joint control of the fiduciary and a surety on the bond of the fiduciary shall not increase the liability of the fiduciary."
 {¶ 28} R.C. 2109.41 does not specify a time frame for compliance, but caselaw indicates that those funds must be deposited in an appropriate account within a reasonable time. In re McIntire's Guardianship (1940), 65 Ohio App. 143-147-148. Thus, a fiduciary who does not deposit all funds received as a fiduciary in an Ohio bank within a reasonable time after receiving the funds may be in violation of that statute.
 {¶ 29} Nevertheless, this statute does not give the probate court the authority to penalize Appellant for not complying with it. The statute itself does not provide for any penalty a fiduciary incurs when violating that statute. Furthermore, the Ohio Supreme Court has held that a violation of this statute may, along with other violations, be the basis for disbarment. See Toledo Bar Asss'n v. Bartlett (1974),39 Ohio St.2d 100. As this probate court is aware, disciplinary matters are the sole province of the Ohio Supreme Court, not the lower courts.State ex rel. Buck v. Maloney, 102 Ohio St.3d 250, 2004-Ohio-2590. Thus, if Appellant breached any duty when it delayed transferring the funds to the Administratrix, then that would be punishable by the Ohio Supreme Court, not the Mahoning County Probate Court.
 {¶ 30} The probate court apparently believes that it can punish Appellant despite the fact that the Ohio Supreme Court has exclusive jurisdiction over disciplinary matters since none of the attorneys in the law firm are licensed to practice in the State of Ohio. Indeed, either the probate court or the magistrate specifically noted that these attorneys were out-of-state attorneys in the vast majority of these cases. But the probate court's apparent belief that it has the authority to discipline out-of-state attorneys is misplaced. The Ohio Supreme Court has consistently disciplined out-of-state attorneys when necessary. It's exclusive jurisdiction does not apply only to the attorneys licensed to practice in this state. See Disciplinary Counsel v. Fucetola,93 Ohio St.3d 145, 2001-Ohio-1303; Cleveland Bar Association v. Misch,82 Ohio St.3d 256, 1998-Ohio-0413. Furthermore, the Disciplinary Board of the Supreme Court of Pennsylvania has exclusive jurisdiction over attorney discipline in that state. Penn.R.Disc.Enfor. 103.
 {¶ 31} Finally, the probate court's own local rules do not give it the authority to penalize Appellant in this case. Loc.R. 40.3 allows the probate court to reduce attorney's fees if "a disparity or injustice" would result from granting the fees requested. Setting aside whether the probate court can institute such a rule (The Eleventh District has found that a probate court cannot reduce attorney's fees in order to achieve an equitable result. In re Estate of Wyant, 11th Dist. No. 2001-G-2388, 2002-Ohio-6706, at ¶ 17), the rule does not apply here since Appellant's actions did not affect the corpus of the estate. It deposited the funds in question in a Pennsylvania bank. Those funds would have received interest in that bank account in the same way they would have if they were in an Ohio bank. Thus, the estate was not materially prejudiced by Appellant's actions. In fact, the trial court's actions probably created a windfall for the estate by allowing it to keep the interest earned while the account was in the Pennsylvania bank and giving it the amount of "interest" it penalized Appellant.
 {¶ 32} The probate court's decision to sanction Appellant in these cases is an abuse of discretion, and Appellant's assignments of error are meritorious.
 Conclusion {¶ 33} Based on the reasons listed above, Appellant's assignments of errors in all these cases are sustained and the judgment entries of the trial court under review in this decision are reversed and modified. In the previous cases Appellant appealed to this court, we awarded Appellant the fees which the probate court charged as a penalty. We do so in these cases as well.
 {¶ 34} As mentioned above, in all but seven of these cases, funds have been held in escrow pending the outcome of those appeals. The amounts held in escrow in most of those cases consist of both the reduced fees addressed in this opinion and the difference between the litigation expenses requested and those awarded. Appellant did not argue in any of these appeals that the trial court erred when calculating reasonable litigation expenses, so it is not entitled to the funds held in escrow reflecting those amounts. Appellant is only entitled to those amounts related to the reduction in fees addressed in this opinion.
 {¶ 35} In accordance with our precedent, the escrow orders in these cases are vacated and we award the amounts deducted from Appellant's fees to Appellant. Those amounts are as follows:
 {¶ 36} In Appellate Case Number 04 MA 70: $1,732.05
 {¶ 37} In Appellate Case Number 04 MA 71: $6,339.17
 {¶ 38} In Appellate Case Number 04 MA 72: $4,851.33
 {¶ 39} In Appellate Case Number 04 MA 73: $12,281.94
 {¶ 40} In Appellate Case Number 04 MA 75: $4,981.33
 {¶ 41} In Appellate Case Number 04 MA 77: $4,834.16
 {¶ 42} In Appellate Case Number 04 MA 78: $2,660.70
 {¶ 43} In Appellate Case Number 04 MA 79: $6,149.78
 {¶ 44} In Appellate Case Number 04 MA 85: $6,815.62
 {¶ 45} In Appellate Case Number 04 MA 86: $1,185.25
 {¶ 46} In Appellate Case Number 04 MA 121: $537.53
 {¶ 47} In Appellate Case Number 04 MA 122 $2,572.32
 {¶ 48} In Appellate Case Number 04 MA 123 $5,457.84
 {¶ 49} In Appellate Case Number 04 MA 124: $1,846.00
 {¶ 50} In Appellate Case Number 04 MA 125: $9,792.60
 {¶ 51} In Appellate Case Number 04 MA 126: $1,392.36
 {¶ 52} In Appellate Case Number 04 MA 127: $2,662.62
 {¶ 53} In Appellate Case Number 04 MA 128: $19,652.79
 {¶ 54} In Appellate Case Number 04 MA 129: $1,273.37
 {¶ 55} In Appellate Case Number 04 MA 131: $1,433.49
 {¶ 56} In Appellate Case Number 04 MA 132: $4,634.62
 {¶ 57} In Appellate Case Number 04 MA 133: $10,345.37
 {¶ 58} In Appellate Case Number 04 MA 135: $3,291.41
 {¶ 59} In Appellate Case Number 04 MA 137: $10,992.15
 {¶ 60} In Appellate Case Number 04 MA 138: $10,012.50
 {¶ 61} In Appellate Case Number 04 MA 139: $578.36
 {¶ 62} In Appellate Case Number 04 MA 140: $1,937.73
 {¶ 63} In Appellate Case Number 04 MA 141: $1,877.91
 {¶ 64} In Appellate Case Number 04 MA 151: $1,446.58
 {¶ 65} In Appellate Case Number 04 MA 152: $2,952.60
 {¶ 66} In Appellate Case Number 04 MA 153: $5,149.24
 {¶ 67} In Appellate Case Number 04 MA 196: $2,749.41
 {¶ 68} In Appellate Case Number 04 MA 197: $2,997.37
 {¶ 69} In Appellate Case Number 05 MA 20: $6,840.14
 {¶ 70} These totals add up to a total judgment in favor of Appellant in the amount of $164,257.64, plus interest gained on the amounts held in escrow during the pendency of this action. The balance of escrowed funds remaining in the accounts will be returned to the Estates.
Vukovich, J., Waite, J., concurs.
[1] This language from 04 MA 123, 2000 ES 000663, In re the Estate ofAnthony F. Bowell, Deceased, differed slightly from judgment entry to judgment entry, but each entry's language is substantially similar to the language quoted above.
[2] We later decided that the probate court had no authority to appoint counsel to challenge an appellate court's decision since allowing it to do so would allow the trial court to become a party by "masquerading as one behind an appointed attorney whose performance details are preordained by probate court mandate." State ex rel. Marsteller v.Maloney, 7th Dist. No. 04 MA 279, 2005-Ohio-1836, at ¶ 45.