[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 285.]

RICHLAND COUNTY BAR ASSOCIATION ET AL. *v*. BRICKLEY.

[Cite as *Richland Cty. Bar Assn. v. Brickley*, 2002-Ohio-6416.]

*Attorneys at law—Misconduct—Indefinite suspension with reinstatement, if any, subject to conditions—Neglecting or mishandling cases of fifteen different clients—Failing to respond to requests for information during investigation of misconduct.*

(No. 2002-1087—Submitted August 27, 2002—Decided December 4, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-91.

————————————

**Per Curiam.**

{¶1} We are asked in this case to determine the sanction for an attorney who neglected or otherwise mishandled the cases of 15 different clients and who failed to respond to requests for information during the investigation of this misconduct. The Board of Commissioners on Grievances and Discipline found that respondent, Barry F. Brickley of Mansfield, Ohio, Attorney Registration No. 0011435, committed these acts and thereby violated several Disciplinary Rules and Gov.Bar R. V. The board recommended that respondent be indefinitely suspended from the practice of law with specific conditions to be met before reinstatement will be considered. We agree that respondent's misconduct and the mitigating circumstances surrounding it, particularly his depression and alcoholism, justify an indefinite suspension.

{¶2} In an amended complaint filed on March 15, 2002, relators, Disciplinary Counsel and the Richland County Bar Association, charged respondent with numerous violations of the Code of Professional Responsibility

and Gov.Bar R. V(4)(G).[1]   Relators and respondent subsequently entered into stipulations concerning the alleged misconduct and mitigating circumstances underlying the complaint.   A panel of the board heard the cause and made the following findings.

## I.  Misconduct

### A

{¶3} In 1999, respondent violated DR 6-101(A)(3) (neglecting an entrusted legal matter) and 7-101(A)(2) (failing to carry out a contract for professional services) by accepting $750 from a client to prepare and file documents for the appointment of a guardian for the client's sister.   Respondent prepared the documents and his client signed them, but respondent never filed them.

### B

{¶4} Respondent violated DR 6-101(A)(3) by failing to file a Qualified Domestic Relations Order for a client after her divorce was finalized in December 1999.   The client stood to receive one-half of the value of her ex-husband's 401(k) fund from the divorce decree.   The client repeatedly asked respondent to complete the work and he promised that he would, but he never did.

### C

{¶5} In 1999, respondent violated DR 6-101(A)(3), 7-101(A)(1) (failing to seek client's lawful objectives), and 7-101(A)(2).   He failed to respond to a motion for summary judgment while defending a client in a civil suit, and then he did not file a motion for relief from the resulting $25,965.70 judgment against his client as he had promised.   And in a separate civil case against the same client, respondent

---

1. On April 23, 2002, we imposed an interim remedial suspension of respondent's license to practice law pursuant to Gov.Bar R. V(5a)(B) because the pattern of respondent's alleged misconduct posed a substantial threat of serious harm to the public. *Disciplinary Counsel v. Brickley* (2002)*,* 95 Ohio St.3d 1430, 766 N.E.2d 997.

failed to answer the complaint, and a default judgment was entered against the client.

D

**{¶6}** Respondent also violated Gov.Bar R. V(4)(G) by failing to cooperate in the Disciplinary Counsel's investigation of grievances concerning the three clients mentioned in subsections A, B, and C, as well as two other clients. From December 1999 through April 2001, respondent failed to answer numerous certified letters of inquiry in these matters for which he or his agent had signed the return receipt.

E

**{¶7}** In 1996, respondent violated DR 2-106 (charging an illegal or clearly excessive fee), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4) (failing to promptly return client's funds) after accepting $520 from a client to establish a guardianship for the client's aunt. Respondent never filed the guardianship papers and failed to return the client's telephone calls about the matter. At one point, respondent promised a bar association investigator that he would remedy the situation, but he failed to return the money paid to him as a retainer.

F

**{¶8}** In 1998, respondent violated DR 6-101(A)(3) by promising to bring a lawsuit on a couple's behalf concerning a physical assault. The clients paid respondent a $400 retainer and $126 for a filing fee, but he did not file the action. In December 1999, respondent returned the couple's money, but during the interim, the statute of limitations on the clients' assault claim expired.

G

**{¶9}** Respondent violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 6-101(A)(3) by promising to prepare and file a shared-parenting agreement for a client in March 1999. After the mother of the client's child missed several appointments to sign the agreement,

respondent agreed to file an action on the client's behalf to obtain custody or be awarded visitation rights. In September or October 1999, respondent told his client that the necessary papers had been filed and that he was just waiting for them to be returned. But in November 1999, the client learned that respondent had not filed the papers and discharged him.

## H

{¶10} Respondent violated DR 6-101(A)(3) and 7-101(A)(1) by promising to prepare and file a client's 1998 income tax return. Respondent obtained an extension until August 1999 to file the return but did not return his client's calls or meet with her to finish the return. In October 1999, the client filed for bankruptcy and in December 1999, the client's bankruptcy trustee asked respondent for the client's tax return or her records. Respondent failed to provide them. Respondent later had a bookkeeping service prepare the 1998 return, and he so advised his client in March 2000, after she had filed a grievance against him.

{¶11} Respondent also agreed to file a motion to expunge a previous criminal conviction for this client. He never filed the motion, and the client retained the services of another attorney, who ultimately obtained the expungement.

## I

{¶12} In April 2000, respondent violated DR 6-101(A)(3) and 7-101(A)(2) after promising to complete a change of custody agreement for a client whose ex-wife had already agreed to the new arrangement. Respondent assured the client that the process would take only a few weeks and that he would prepare the agreed judgment entry. Respondent never filed the papers necessary to change custody of the client's child.

J

{¶13} Respondent violated DR 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) and 7-101(A)(2) and (3) (intentionally causing client damage or prejudice) after he agreed to represent a client in several pending criminal matters, including two traffic offenses and a probation violation case. In March 2000, the client's husband paid respondent $3,100 with the understanding that all the money would go to court costs, fines, and fees for the reinstatement of his wife's driver's license. Respondent did not place these funds in a client trust account.

{¶14} In May 2000, respondent paid the client's fines and court costs in full, a total of $614. In November of that year, he sent a $1,359 check toward his client's $2,415 license reinstatement fee. Also in November, respondent took $1,754 in fees from the client's funds without authority from his client. He eventually returned $750 of his fee, but the check he wrote for the client's license reinstatement fee was returned for insufficient funds. Respondent later paid the license reinstatement fee. During the investigation of this misconduct, respondent tried to get his client's husband to sign a letter that respondent had prepared to send to the Richland Bar Association explaining respondent's use of the funds, but the husband refused.

K

{¶15} Respondent violated Gov.Bar R. V(4)(G) by failing to cooperate in the Richland County Bar Association's investigation of his misconduct. During September and October 2000, respondent failed to answer several requests for information concerning the grievance of the client described in subsection I herein. During December 2000 and January 2001, he also failed to keep several meetings with relator to discuss the grievance of the client described in subsection J herein.

L

**{¶16}** Respondent violated DR 1-102(A)(6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law) and 6-101(A)(3) after agreeing in April 2001 to represent a client in a divorce proceeding. By July 6, 2001, the client had paid respondent $625, and respondent had assured him that the divorce would be completed by December of that year. When the client later discovered that a hearing had not been scheduled for December 2001, respondent assured him that the divorce would be completed in January 2002. Respondent had not filed the complaint for divorce at the time he made this representation. In fact, respondent did not initiate the client's divorce proceedings until February 2002.

M

**{¶17}** Respondent violated DR 6-101(A)(3) and 9-102(B)(4) during 2001 and 2002 after promising to represent a client in a criminal proceeding, a contempt proceeding against her husband, and a motion to modify child support. The client paid respondent $350 to appear on her behalf in the criminal case and $150 to handle the contempt and support cases. Respondent did appear in court but did nothing in the other two matters. However, he withdrew the client's $500 from his client trust account. He has since promised to repay $150 but has not.

N

**{¶18}** In 2001, respondent violated DR 6-101(A)(3) after agreeing in June to work pro bono for a client who wanted to arrange for her husband to adopt her children. The client paid $156 for filing fees, and respondent represented that he would have the adoption completed in six weeks. He also advised her on two separate occasions that a hearing had been scheduled even though he had not yet filed anything in court. In October 2001, the client learned from the court that respondent had still not filed the adoption documents, so she took her records and filing fee back from respondent and filed the case herself.

O

**{¶19}** Respondent violated DR 6-101(A)(3) during 2001 after he agreed to represent a client who wanted a divorce so that he could marry his girlfriend in June of that year. The client's girlfriend paid respondent $750. In March 2001, respondent represented that the client had a court date in June even though he had not yet filed the case. Respondent finally filed a complaint for divorce on June 11, 2001.

P

**{¶20}** Respondent violated DR 1-102(A)(4) and 6-101(A)(3) after he agreed in July 2001 to represent a client pro bono in a personal injury matter and to contact an insurance carrier concerning the matter. Respondent told his client that he was in the process of settlement negotiations when, in fact, he was not. He also falsely represented that the carrier had twice attempted to deliver settlement checks to his office. The client later learned that respondent had told these lies just to get the client "off his back."

Q

**{¶21}** Finally, respondent violated Gov.Bar R. V(4)(G) by failing to answer Disciplinary Counsel's requests for information about grievances filed by the clients described in subsections N, O, and P, as well as two other clients.

## II. Recommendation

**{¶22}** In recommending a sanction for this misconduct, the panel considered the factors stipulated as mitigating, which were corroborated by the forthright testimony of respondent, a professional acquaintance and friend of respondent, and respondent's treating psychologist. The panel learned that respondent had been a competent practitioner prior to the events at issue but was subsequently devastated by the decline of his marriage and eventual divorce. His despondency led to alcoholism, three convictions for driving while under the influence of alcohol, and, in January 2000, hospitalization. The panel determined that respondent's misconduct over the preceding years had stemmed from his

personal misfortunes and the condition diagnosed by his psychologist — depression/anxiety adjustment disorder with mixed emotional features and alcohol dependence. The panel also determined that respondent had been treated for this condition and is now in recovery.

{¶23} Taking into account (1) the above-mentioned factors, (2) that respondent's misconduct was similar to the misconduct in *Toledo Bar Assn. v. Godbey* (2002), 94 Ohio St.3d 416, 763 N.E.2d 1156, and *Cincinnati Bar Assn. v. Kieft* (2002), 94 Ohio St.3d 429, 763 N.E.2d 1167, and (3) that relators stipulated to a sanction of indefinite suspension, the panel recommended that respondent be suspended indefinitely from the practice of law. The panel also recommended that respondent's reinstatement be conditioned on his documented reimbursement of $750 to the client described in subsection A herein, $520 to the client described in subsection E herein, and $150 to the client described in subsection M herein, in addition to the requirements of Gov.Bar R. V(10). The panel further recommended that respondent document his completion of 12 hours of accredited continuing legal education courses in office management and that he enter into and satisfactorily complete a Lawyer's Support System Recovery Contract under the supervision of the Ohio Lawyers Assistance Program, Inc. Finally, the panel recommended that, if reinstated, respondent should serve a two-year probation period monitored by an attorney selected by the Richland County Bar Association.

{¶24} The board adopted the panel's findings of misconduct and recommendation, and we agree with its decision. Disbarment is ordinarily the sanction when an attorney's misconduct permeates his practice in the way that respondent's misconduct did in this case. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993. However, even when disbarment is otherwise appropriate, we have tempered our disposition if sufficient mitigating factors exist and the board recommends it. *Cleveland Bar Assn. v. Harris,* 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621, at ¶ 6. We consider this to be such a case.

**{¶25}** Accordingly, respondent is indefinitely suspended from the practice of law in Ohio, and his reinstatement, if any, will be subject to the recommended conditions. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

David L. Remy; Brown, Bemiller, Murray & McIntyre, L.L.P., and J. Jeffrey Heck, for relator Richland County Bar Association.

Jonathan E. Coughlan, Disciplinary Counsel, and Dianna M. Anelli, Assistant Disciplinary Counsel, for relator Office of Disciplinary Counsel.

Barry F. Brickley, pro se.

————————————