OFFICE OF DISCIPLINARY COUNSEL *v.* BRUMBAUGH.

[Cite as *Disciplinary Counsel v. Brumbaugh,*
99 Ohio St.3d 65, 2003-Ohio-2470.]

(No. 2003–0418—Submitted April 16, 2003—Decided May 16, 2003.)

**Per Curiam.**

{¶ 1} In December 1992, we suspended respondent, Phillip Brumbaugh of Greenville, Ohio, Attorney Registration No. 0022652, from the practice of law in Ohio for six months for neglecting entrusted legal matters. *Darke Cty. Bar*

*Assn. v. Brumbaugh* (1992), 65 Ohio St.3d 151, 602 N.E.2d 606. We stayed the suspension upon conditions. Id.

{¶ 2} In October 2000, we suspended respondent from the practice of law in Ohio for two years for neglecting entrusted legal matters, but we stayed the suspension upon conditions. *Darke Cty. Bar Assn. v. Brumbaugh* (2000), 90 Ohio St.3d 248, 737 N.E.2d 27.

{¶ 3} On May 23, 2002, we found respondent in contempt for failing to comply with our October 2000 order, and we suspended him from the practice of law and ordered him to surrender his certificate of admission and attorney registration card and to file an affidavit of compliance. *Darke Cty. Bar Assn. v. Brumbaugh,* 95 Ohio St.3d 1467, 2002-Ohio-2424, 768 N.E.2d 659. On October 3, 2002, we found respondent in contempt for failing to comply with our May 2002 order and suspended him from the practice of law in Ohio for two years for breaching the conditions of our October 2000 order. *Darke Cty. Bar Assn. v. Brumbaugh,* 96 Ohio St.3d 1530, 2002-Ohio-5303, 776 N.E.2d 109.

{¶ 4} The disciplinary violations in this case involve the following facts. In 2000, a client hired respondent to represent him in a paternity and child-support matter. They agreed that respondent would receive a contingent fee of 30 percent of the refunded child support awarded to the client upon establishing that he was not the father of the child. Despite numerous attempts by the client to contact respondent over the following year, respondent did not respond. Respondent did not file documents on his client's behalf or otherwise complete his representation and did not return the client's file.

{¶ 5} In March 2001, a client retained respondent to represent her in a guardianship matter. Respondent requested and received $160, which included a $150 filing fee. At their initial meeting, the client and her daughter noticed respondent's slurred speech and the strong odor of alcohol about his person. The client subsequently made repeated unsuccessful attempts over a two-month period to talk to respondent concerning the status of her case. When the client finally did talk to respondent, respondent misrepresented the status of the case. The client requested that respondent return the $150 filing fee that she had given him. Respondent did not file anything on behalf of his client. The client ultimately retained another attorney, who obtained the relief she sought within a week. The client later received a refund of the filing fee she had given respondent.

{¶ 6} In October 2000, a client retained respondent to seek guardianship of her orphaned grandchildren, to probate an estate, and possibly to institute a wrongful-death action. Despite repeated assurances by respondent that he was preparing the appropriate documents and would file them, he never filed anything on his client's behalf.

{¶ 7} In 2001, the family of a decedent retained respondent to probate the estate. In September 2001, a person agreed to purchase the decedent's home for $75,000, and he delivered an earnest money check of $1,000 to respondent. The buyer later gave respondent a check for the remaining $74,000, but respondent did not inform either the family or the administrator of the estate of his receipt of the check. Respondent placed these funds in his IOLTA account. At the October 2001 closing, in accordance with documents prepared by respondent, the estate received a check for $31,770.22, and respondent kept the remaining $43,229.78 in his IOLTA account. This remaining amount was to pay off the balance of the secured interest in the decedent's home held by the United States Department of Agriculture/Rural Housing Service ("USDA/RHS").

{¶ 8} Despite receiving past-due notices and promising the decedent's family and the administrator of her estate that he had paid or would pay the USDA/RHS interest, he retained the money in his IOLTA account from October 9, 2001, to December 21, 2001. After the administrator filed a grievance against respondent with a local bar association, respondent falsely represented to the association's certified grievance committee that he had paid off the interest and that he had forwarded a check to USDA/RHS. Respondent withdrew the money from his IOLTA account and delivered it to the administrator after the committee scheduled his deposition.

{¶ 9} In April 2002, relator, Disciplinary Counsel, filed a complaint charging respondent with having violated multiple Disciplinary Rules. Respondent filed an answer admitting all of the allegations of the complaint. The matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court upon testimony and the parties' agreed stipulations. The parties recommended an indefinite suspension from the practice of law in Ohio as the appropriate sanction for respondent's misconduct.

{¶ 10} The panel found the facts as previously specified and concluded that by his conduct, respondent violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (engaging in conduct adversely reflecting on lawyer's fitness to practice law), 2–110(A)(2) (failing to promptly return papers to which client is entitled after withdrawal), 6–101(A)(3) (neglecting an entrusted legal matter), 7–101(A)(2) (intentionally failing to carry out an employment contract), 7–101(A)(3) (intentionally prejudicing or damaging a client during the course of the professional relationship), 9–102(B)(3) (failing to maintain records of client funds in lawyer's possession and to render accounts to client regarding those funds), and 9–102(B)(4) (failing to promptly pay or deliver client funds upon request).

{¶ 11} The panel found that despite significant aggravating factors, the factors supporting mitigation were compelling. Respondent has sought and is receiving

treatment for alcoholism and depression. For example, in the spring of 2002, respondent received inpatient treatment for his alcohol abuse for 28 days, and, since his discharge, he has regularly attended Alcoholics Anonymous meetings. Respondent continues to receive medical treatment for his depression, which is in remission. The panel further found that respondent's misconduct did not irrevocably harm his clients, that he did not obtain financial gain from his misconduct, and that he is an active, respected member of the community who is sincere about overcoming his alcohol dependency and depression. The panel recommended that given the mitigating factors and the parties' agreed sanction, respondent should be indefinitely suspended from the practice of law in Ohio.

{¶ 12} The board adopted the findings and conclusions of the panel. The board recommended that based on his history of substance abuse, respondent should be indefinitely suspended from the practice of law in Ohio, with his readmittance conditioned on proof of his successful treatment and recovery from alcoholism. The board further recommended that the costs of the proceeding be taxed to respondent.

{¶ 13} We adopt the findings, conclusions, and recommendation of the board. An actual suspension from the practice of law is the general sanction for an attorney that engages in a course of conduct that violates DR 1–102(A)(4). *Akron Bar Assn. v. Hoffer* (1999), 86 Ohio St.3d 97, 99, 712 N.E.2d 116.

{¶ 14} Although respondent has been previously disciplined for comparable conduct, the board could properly credit various mitigating factors, including his lack of a dishonest or selfish motive, his substantial cooperation in the disciplinary process following the filing of relator's complaint, his admirable general character for honesty and integrity, and his sincere desire to seek treatment for and overcome his alcoholism and depression. See Section 10(B)(2) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.

{¶ 15} Moreover, although respondent's misconduct was egregious, it was, as relator describes, "dilatory in nature" and "related to his use of alcohol." The parties agreed that there was "no evidence that respondent misappropriated any client funds, or that he enriched himself at client expense."

{¶ 16} Based on the foregoing, an indefinite suspension is an appropriate sanction. See, e.g., *Richland Cty. Bar Assn. v. Brickley,* 97 Ohio St.3d 285, 2002-Ohio-6416, 779 N.E.2d 750 (misconduct including violations of DR 1–102[A][4], 1–102[A][6], 6–101[A][3], 7–101[A][2], and 9–102[B][4] warranted indefinite suspension despite evidence of misappropriation of client funds when mitigating evidence included treatment for the depression and alcohol dependence that contributed to the violations).

{¶ 17} Respondent is hereby indefinitely suspended from the practice of law in Ohio. Respondent is currently serving a two-year suspension from the practice of law pursuant to our October 3, 2002 entry. 96 Ohio St.3d 1530, 2002-Ohio-5303, 776 N.E.2d 109. We specified conditions for his reinstatement to practice law in Ohio in that entry. Id. Our decision in this case imposes a separate sanction, and under Gov.Bar R. V(10)(B), respondent must wait two years from the date of this order before seeking reinstatement. See, e.g., *Cuyahoga Cty. Bar Assn. v. Judge,* 96 Ohio St.3d 467, 2002-Ohio-4741, 776 N.E.2d 21, ¶ 6. Accordingly, consistent with the board's recommendation, we order that respondent may not file a petition for reinstatement for two years from the date of this order and that his readmittance be conditioned on proof of his successful treatment of and recovery from alcoholism and his satisfaction of all orders of the court, including those specified in our October 3, 2002 entry. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON, and O'CONNOR, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Kevin L. Williams, Assistant Disciplinary Counsel, for relator.

Lopez, Kemmer, Severt & Pratt Co., L.P.A., and Jose M. Lopez, for respondent.