CINCINNATI BAR ASSOCIATION ET AL. *v.* AL'UQDAH.

[Cite as *Cincinnati Bar Assn. v. Al'Uqdah,*
99 Ohio St.3d 358, 2003-Ohio-3888.]

(No. 2003–0700—Submitted June 4, 2003—Decided August 6, 2003.)

**Per Curiam.**

{¶ 1} In October 1999, we suspended respondent, William M. Al'Uqdah of Cincinnati, Ohio, Attorney Registration No. 0039809, from the practice of law in Ohio for being in default of a child support order. *In re Al'Uqdah* (1999), 87 Ohio St.3d 1426, 718 N.E.2d 444. Upon being notified that respondent was no longer in default, we reinstated him to the practice of law in December 1999. *In re Al'Uqdah* (1999), 87 Ohio St.3d 1466, 720 N.E.2d 920.

{¶ 2} In October 2001, we again suspended respondent from the practice of law in Ohio for failing to comply with a child support order. *In re Al'Uqdah* (2001), 93 Ohio St.3d 1442, 755 N.E.2d 904. Respondent has not been reinstated from this suspension.

{¶ 3} The disciplinary violations in this case arise from the following facts. In August 1998, a client retained respondent to represent him in a civil rights case pending in a federal district court. Respondent received a $2,500 retainer.

Aside from attending a pretrial conference, respondent did no work on the case. In January 1999, the same client paid respondent a $750 retainer to represent him in a bankruptcy action. Respondent did nothing on the case. Despite the client's requests for refunds of the retainers, respondent did not refund any portion of the retainers.

{¶ 4} A group of other clients retained respondent to represent them in a personal-injury matter. In November 1996, respondent and one of the clients executed a medical lien in favor of a chiropractic clinic. In June 1997, respondent signed the lien as the attorney, agreeing to withhold from any settlement, judgment, or verdict amounts necessary to protect the clinic. After a $24,000 settlement of the claims, respondent deposited some of the clients' settlement checks in his IOLTA account. In October 1999, respondent issued checks drawn from his IOLTA account to another client and for his own benefit. In January 2000, a check respondent issued to two of his clients as part of the settlement was returned for insufficient funds. In March 2000, respondent issued checks to the chiropractic clinic to satisfy the clients' medical bills, but the total payment was $2,281.88 less than what they owed to the clinic.

{¶ 5} In October 1999, another client paid respondent a $2,000 retainer to represent him on criminal charges. When the client appeared in court in November 1999, he was advised that respondent had been suspended from the practice of law effective October 20, 1999, for failure to pay child support. Respondent never informed the client of his suspension and never did anything in the case. Despite repeated requests for a refund, respondent did not respond.

{¶ 6} From 1992 through 1998, a different client paid respondent $1,300 to represent him in a divorce case and related matters. During his representation, respondent delayed filing a motion, failed to act upon or file other motions, failed to appear for hearings, and failed to notify his client of a hearing. Respondent's conduct prejudiced his client, who was twice found in contempt for failing to pay child support. Respondent did not respond to the client's request for a refund.

{¶ 7} In 2000, another client paid respondent $2,250 to represent him in a divorce case and on certain criminal matters. Respondent did not keep his client informed about the cases, and respondent failed to appear for scheduled hearings. Respondent did not respond to the client's requests for a refund.

{¶ 8} In February 2001, a separate client paid respondent $1,500 to file bankruptcy petitions for herself and her brother-in-law. Respondent did not perform any work for the client, retained her paperwork, failed to respond to her telephone calls, and did not refund her money.

{¶ 9} Respondent represented another client in a divorce proceeding. Pursuant to the divorce decree, the client was ordered to quitclaim his interest in the marital residence to his wife and pay her money as a part of a property

settlement. After respondent failed to properly prepare the deed for his client and failed to appear at a hearing, the court found the client in contempt. The client was ordered to pay his wife's attorney fees, and the client hired another attorney to prepare the deed. Notwithstanding respondent's promise to do so, he never repaid this money to his client.

{¶ 10} A client paid respondent a retainer of $800 to handle a matter related to her husband's discharge from employment. Despite representations that he had completed a document for filing, respondent never filed a complaint and did not return repeated telephone inquiries from the client. In addition, respondent did not return the client's file or refund the retainer.

{¶ 11} Grievances were filed with relators, Cincinnati Bar Association and Office of Disciplinary Counsel, concerning these matters, and, for the most part, respondent failed to respond to relators' letters and subpoenas.

{¶ 12} The Cincinnati Bar Association and the Disciplinary Counsel filed complaints charging respondent with violations of multiple Disciplinary Rules and Gov.Bar R. V(4)(G) (failing to cooperate with a disciplinary investigation). The cases were consolidated, and after respondent failed to respond, the matter was submitted to a master commissioner under Gov.Bar R. V(6)(F)(2) on the Cincinnati Bar Association's motion for default judgment.

{¶ 13} The master commissioner found the facts as previously set forth and concluded that respondent's conduct violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(6) (engaging in conduct adversely reflecting on lawyer's fitness to practice law), 2–106(A) (entering into an agreement for, charging, or collecting a clearly excessive fee), 2–110(A)(2) (withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to rights of client), 2–110(A)(3) (withdrawing from employment without promptly refunding unearned fees), 3–101(B) (practicing law in violation of regulations of the profession), 6–101(A)(2) (handling a legal matter without adequate preparation), 6–101(A)(3) (neglecting an entrusted legal matter), 7–101(A)(1) (intentionally failing to seek lawful objectives of client), 7–101(A)(2) (intentionally failing to carry out employment contract), 7–101(A)(3) (intentionally prejudicing or damaging client during course of professional relationship), 9–102(A) (failing to deposit all client funds in one or more identifiable bank accounts), 9–102(B)(3) (failing to maintain complete records of all client funds coming into lawyer's possession and failing to render appropriate accounts to the client), 9–102(B)(4) (failing to promptly pay or deliver client funds upon request), and Gov.Bar R. V(4)(G).

{¶ 14} The master commissioner found no mitigating factors. He recommended, based on the recommendation of the Cincinnati Bar Association and the violations found, that respondent be indefinitely suspended from the practice of

law in Ohio. The Board of Commissioners on Grievances and Discipline adopted the master commissioner's findings of fact and conclusions of law but recommended that respondent be permanently disbarred "based on his outrageous pattern of misconduct evidencing no regard for his clients, the courts or the disciplinary system." The board further recommended that the costs of the proceeding be taxed to respondent.

{¶ 15} We agree with the board's recommended sanction. " 'As we have consistently held, the normal sanction for misappropriation of client funds coupled with neglect of client matters is disbarment.' " *Erie–Huron Counties Joint Certified Grievance Commt. v. Meyerhoefer,* 99 Ohio St.3d 62, 2003-Ohio-2467, 788 N.E.2d 1073, ¶ 10, quoting *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993. Although we have at times adopted a board's recommendation of a lesser sanction when sufficient mitigating factors exist, the board did not recommend a lesser sanction here, and no significant mitigating evidence is present. See *Disciplinary Counsel v. Connors,* 97 Ohio St.3d 479, 2002-Ohio-6722, 780 N.E.2d 567, ¶ 19; cf. *Erie–Huron,* 99 Ohio St.3d 62, 2003-Ohio-2467, 788 N.E.2d 1073, ¶ 10–11; *Richland Cty. Bar Assn. v. Brickley,* 97 Ohio St.3d 285, 2002-Ohio-6416, 779 N.E.2d 750, ¶ 24.

{¶ 16} Moreover, like the misconduct of the disbarred attorneys in *Connors,* 97 Ohio St.3d 479, 2002-Ohio-6722, 780 N.E.2d 567, at ¶ 19, and *Cleveland Bar Assn. v. Dixon,* 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15, "misappropriation was but one form of respondent's misconduct here, and the compelling interest of protecting the public requires disbarment." Respondent violated myriad duties to his clients, DR 2–106(A), 2–110(A)(2) and (3), 6–101(A)(2) and (3), 7–101(A)(1), (2), and (3), 9–102(A), (B)(3), and (4); the public, DR 1–102(A)(4); the legal system, DR 1–102(A)(6); and the legal profession, DR 3–101(B) and Gov.Bar R. V(4)(G).

{¶ 17} Therefore, respondent's "conduct of neglecting entrusted legal matters, engaging in a continuous course of deceit involving misappropriation of clients' funds, failing to make restitution, and failing to cooperate in the investigation of the grievances warrants disbarment." *Cincinnati Bar Assn. v. Schwartz,* 98 Ohio St.3d 438, 2003-Ohio-1635, 786 N.E.2d 866, ¶ 15.

{¶ 18} Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

F.E. SWEENEY, J., dissents and would indefinitely suspend respondent.

Peter Rosenwald and Maria C. Palermo, for relator Cincinnati Bar Association.

Jonathan E. Coughlan, Disciplinary Counsel, for relator Disciplinary Counsel.