OFFICE OF DISCIPLINARY COUNSEL *v.* HERMAN.

[Cite as *Disciplinary Counsel v. Herman,*
99 Ohio St.3d 362, 2003-Ohio-3932.]

(No. 2003–0725—Submitted June 4, 2003—Decided August 6, 2003.)

**Per Curiam.**

{¶ 1} On March 24, 1998, the Auglaize County Court of Common Pleas, Domestic Relations Division, ordered an attorney to draft qualified domestic relations orders ("QDROs")[1] consistent with the terms discussed by the parties at a hearing. The attorney prepared the documents, and he and his client reviewed and signed the QDROs in May 1998. The QDROs were then forwarded to respondent, John Herman of Wapakoneta, Ohio, Attorney Registration No. 0003056, who was the attorney for the ex-wife of the other attorney's client. The ex-husband's attorney instructed respondent to review the documents with the ex-wife, sign and file them with the domestic relations court, and forward copies to the plan administrators.

{¶ 2} One of the QDROs prepared by the ex-husband's attorney provided that the ex-wife was entitled to $5,113 of a 401(k) account. Without informing

---

1. A QDRO is a "domestic relations order which creates or recognizes the right or rights of a spouse, former spouse, child, or other dependent to receive all or a portion of the benefits payable from a private pension plan for the provision of or payment of child support, spousal support, or marital property rights due from the private pension plan participant." See, generally, I Sowald & Morganstern, Domestic Relations Law (2002) 408, Section 9:20; see, also, *Gordon v. Gordon* (2001), 144 Ohio App.3d 21, 759 N.E.2d 431.

opposing counsel, respondent changed his client's entitlement in the QDRO from $5,113 to $10,111.64. Respondent then replaced the original signature page of the QDRO with a new signature page on which he signed the names of opposing counsel and the ex-husband without the knowledge or consent of either.

{¶ 3} In May 1998, opposing counsel sent respondent a QDRO concerning the ex-husband's pension benefits that provided a 45 percent share to respondent's client. Respondent altered this QDRO to change his client's share from 45 percent to 50 percent, again without informing either opposing counsel or the ex-husband.

{¶ 4} In July 1999, one of respondent's employees filed the falsified QDROs with the domestic relations court and forwarded them to the fund administrators. Respondent said that he had not intended these documents to be filed. When opposing counsel and the ex-husband discovered that the QDROs had been altered and filed, they contacted the Auglaize County Sheriff's Office to report respondent's suspected criminal conduct. Respondent admitted to a deputy sheriff that he had altered the QDROs and forged at least one of the signatures.

{¶ 5} A grand jury subsequently indicted respondent on felony and misdemeanor counts of perjury, forgery, and falsification. In April 2001, respondent entered a plea of no contest to attempted tampering with documents, a misdemeanor of the second degree, in exchange for a dismissal of the felony charges. On September 17, 2001, the Auglaize County Court of Common Pleas sentenced respondent to two years of community control and 300 hours of community service for his misdemeanor conviction. Respondent did not apologize or otherwise communicate with his client after the discovery of the falsified QDROs.

{¶ 6} On April 8, 2002, relator, Disciplinary Counsel, filed a complaint charging respondent with violating several Disciplinary Rules. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court conducted a hearing, heard testimony, and received agreed stipulations and exhibits. The panel found the facts as stipulated and concluded that respondent's conduct violated DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude), 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 7–102(A)(5) (knowingly making a false statement of law or fact), and 7–102(A)(6) (knowingly participating in the creation or preservation of false evidence).

{¶ 7} In mitigation, the panel found that respondent had not been the subject of any previous disciplinary findings or sanctions and that he had received no direct financial benefit from his misconduct. After respondent discovered that the falsified QDROs had been filed with the court, respondent cooperated with opposing counsel in having the orders set aside, compensated opposing counsel

for the time he spent to do so, and cooperated with the criminal investigation and his prosecution. Respondent subsequently successfully completed his probation and fully cooperated in this disciplinary proceeding. The panel further noted that numerous letters attested to respondent's exemplary character and reputation. Relator recommended that respondent receive a one-year suspension from the practice of law in Ohio with six months stayed, and respondent recommended that he receive a public reprimand or a stayed suspension. The panel recommended a one-year suspension with the entire suspension stayed. The board adopted the findings of fact and conclusions of law of the panel but recommended that respondent be suspended for one year with six months of the suspension stayed "given his express fraudulent actions as an officer of the court and his intent to deceive his client." The board further recommended that the costs of the proceeding be taxed to respondent.

{¶ 8} We adopt the sanction recommended by the board and relator. "An actual suspension from the practice of law is the general sanction for an attorney that engages in a course of conduct that violates DR 1–102(A)(4)." *Disciplinary Counsel v. Brumbaugh,* 99 Ohio St.3d 65, 2003-Ohio-2470, 788 N.E.2d 1076, ¶ 13.

{¶ 9} Nevertheless, where, as here, substantial mitigating factors exist, a partial stay of a suspension is an appropriate sanction. Cf. *Disciplinary Counsel v. Kafantaris,* 99 Ohio St.3d 94, 2003-Ohio-2477, 789 N.E.2d 192 (12–month suspension with six months stayed warranted for attorney whose misconduct included violations of DR 1–102[A][4] and [5] when attorney fully cooperated with disciplinary investigation and various people attested to his honesty, character, and reputation); *Disciplinary Counsel v. LaCour* (2001), 91 Ohio St.3d 154, 743 N.E.2d 395 (partially stayed suspension imposed on attorney whose misconduct included violations of DR 1–102[A][4] and [5] where mitigating evidence included lack of prior disciplinary record and contributions to community during a long legal career). Respondent lacked any prior disciplinary record, made efforts to rectify the consequences of his misconduct, fully cooperated with authorities in his criminal and disciplinary proceedings, and had a reputation in the legal community for exemplary character and professionalism during his lengthy legal career. See Sections 10(B)(2)(a), (c), (d), and (e) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline.

{¶ 10} Accordingly, respondent is hereby suspended from the practice of law in Ohio for one year, with six months of the suspension stayed on the condition that he commit no further violations of the Disciplinary Rules. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 11} Due to the severity of Herman's actions, I would suspend respondent from the practice of law for one year and stay no portion of the sanction.

{¶ 12} The record is clear that Herman acted in a blatantly duplicitous manner when he changed the amounts on two different QDROs without informing either his client or opposing counsel. Herman was subsequently convicted of a second-degree misdemeanor for attempted tampering with documents. As the majority observes, Herman offered no apology for his actions. It is also undisputed that following his conviction, the board found that Herman had violated five Disciplinary Rules.

{¶ 13} The panel found certain mitigating factors, which led to the majority's staying six months of Herman's one-year suspension. Such factors, however, are not strong enough to mitigate Herman's damaging acts. For these reasons, I would suspend Herman from the practice of law for one year with no portion stayed.

O'CONNOR, J., concurs in the foregoing dissenting opinion.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Kevin L. Williams, Assistant Disciplinary Counsel, for relator.

Elsass, Wallace, Evans, Schnelle & Co., L.P.A., and Richard Wallace, for respondent.