DISCIPLINARY COUNSEL *v.* LANTZ.

[Cite as *Disciplinary Counsel v. Lantz,*
102 Ohio St.3d 93, 2004-Ohio-1806.]

(No. 2003–0699—Submitted June 4, 2003—Resubmitted
January 12, 2004—Decided April 28, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Charles J. Lantz of Lancaster, Ohio, Attorney Registration No. 0016201, was admitted to the Ohio bar in 1975. On May 1, 2002, we suspended his license to practice law indefinitely because he failed to account for several clients' funds and other property, did not provide clients the representation that he had promised, and acted dishonestly. *Disciplinary Counsel v. Lantz,* 95 Ohio St.3d 132, 2002-Ohio-1757, 766 N.E.2d 593.[1] On June 17, 2002, relator, Disciplinary Counsel, charged respondent with 11 more counts of professional misconduct, none of which was the subject of the previous disciplinary case.

{¶ 2} Respondent was served with the complaint but did not answer. An investigator hand-delivered another copy of the complaint with a letter stating that relator would file a default motion if respondent did not respond. Respondent promised to "take care of" the matter at that time but never responded. Relator moved for default under Gov.Bar R. V(6)(F). The Board of Commissioners on Grievances and Discipline then appointed a master commissioner to consider the motion and make findings of fact, conclusions of law, and a recommendation.

{¶ 3} With respect to Count I, evidence established that in October 2000, respondent drafted a check to a client for $4,750 in settlement proceeds. He drew the check on an IOLTA account other than the one in which he had deposited the settlement proceeds. The check was dishonored for insufficient

---

1. At that time, respondent's license was already under an interim suspension because of his conviction of five felonies involving theft or passing bad checks. *In re Lantz* (2001), 93 Ohio St.3d 1407, 754 N.E.2d 256. Facts underlying two of those felonies were at issue in the earlier disciplinary action, while facts underlying at least one other felony are implicated by the misconduct charged in this case. See *State v. Lantz* (July 15, 2002), 5th Dist. No. 01 CA 38, 2002-Ohio-3838, 2002 WL 1729910.

funds. And in June 2001, respondent was convicted of stealing over $4,000 from this client, among other crimes. The master commissioner found that respondent had thereby violated DR 1–102(A)(3) (forbidding illegal conduct involving moral turpitude), (4) (forbidding conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (forbidding conduct prejudicial to the administration of justice), and (6) (forbidding conduct adversely reflecting on the attorney's fitness to practice law); 7–101(A)(3) (barring an attorney from causing damage or prejudice to a client); and 9–102(A) (forbidding commingling of personal and client funds), (B)(3) (requiring an attorney to render appropriate accounts) and (4) (requiring an attorney to promptly return client's funds).

{¶ 4} Evidence in support of Count Two established that another client paid respondent $250 in 1998 with the understanding that respondent would in turn help him obtain an order changing custody of one of his sons. The client and his ex-wife executed an agreed entry in respondent's office, but respondent never filed the entry in court. In 2001, the client paid respondent another $550 to draw up documents necessary to change custody of the client's younger son, but respondent did not file these papers either. Respondent also never repaid any of the client's $800. For these acts, the master commissioner found respondent in violation of DR 1–102(A)(5) and (6); 2–110(A)(2) (requiring an attorney to promptly return client's property); 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter); and 7–101(A)(2) (requiring an attorney to carry out a contract for professional services).

{¶ 5} With respect to Count Three, evidence established that another client paid respondent $1,500 in October 2000 for representation in another custody case. Respondent filed for a continuance but did nothing else on the client's behalf. The client stated that he had no resources to hire another attorney, and he ultimately lost custody of his son because of respondent's neglect. The master commissioner found that respondent had thereby violated DR 1–102(A)(5), 6–101(A)(3), and 7–101(A)(2) and (3).

{¶ 6} Evidence in support of Count Four established that in January 2000, another client paid respondent $1,500 to represent her in a divorce. Afterward, the client was unable to contact respondent despite repeated attempts. Respondent also did not file proposed conclusions of law as requested by the presiding judge or return the client's file as requested. For these acts, the master commissioner found respondent in violation of DR 1–102(A)(6), 6–101(A)(3), and 2–101(A)(2) (sic, 2–110[A][2] ).

{¶ 7} With respect to Count Five, evidence established that respondent attempted in June 2001 to pay taxes and fees for a motor vehicle title by using a check drawn on an IOLTA account that did not contain sufficient funds. The master commissioner found that respondent had thereby violated DR 1–102(A)(6) and 9–102(A).

{¶ 8} Evidence in support of Count Six established that a client paid respondent $5,750 to represent the client in a paternity and child-support dispute. Respondent ignored the client's attempts to contact him, did not file necessary paperwork, and failed to appear as scheduled in court. For these acts, the master commissioner found respondent in violation of DR 1–102(A)(6), 2–110(A)(2), 6–101(A)(3), and 7–101(A)(2) and (3).

{¶ 9} With respect to Count Seven, the evidence established that in August 2000, a client paid respondent $3,000 to represent her in a criminal case. Respondent did not respond to the client's repeated efforts to contact him, and the client was later arrested. After the arrest, respondent asked for more money, and the client paid an additional $1,800. Respondent made one court appearance but did nothing else on the client's behalf. The client later fired respondent and retained other counsel. Afterward, respondent ignored the client's requests for an accounting, failed to refund any unearned fees, and did not return the client's file. The master commissioner found that respondent had thereby violated DR 1–102(A)(6), 2–110(A)(2), 6–101(A)(3), and 7–101(A)(2).

{¶ 10} Evidence in support of Count Eight established that in or before October 1999, another client paid respondent $1,750 to represent the client in post-conviction proceedings. Respondent failed to file necessary papers and failed to respond to his client's requests for information. The client was forced to retain other counsel. For these acts, the master commissioner found respondent in violation of DR 1–102(A)(6), 6–101(A)(3), and 7–101(A)(2).[2]

{¶ 11} With respect to Count Nine, the evidence established that respondent agreed in or before November 2000 to represent another client in a criminal proceeding. Respondent was unprepared for trial, failed to file an appeal as promised, and did not return the client's telephone calls. For these acts, the master commissioner found respondent in violation of DR 1–102(A)(6), 6–101(A)(3), and 7–101(A)(2).[3]

{¶ 12} Evidence in support of Count Ten established that relator sent various certified letters of inquiry concerning client grievances to respondent, sometimes in care of the attorney who represented him in *Disciplinary Counsel v. Lantz,* 95 Ohio St.3d 132, 2002-Ohio-1757, 766 N.E.2d 593. However, respondent apparently never formally retained his former counsel to defend him against the latest complaint. Even so, respondent or an agent signed the certified receipt for five of these letters, and still he did not reply as directed. In addition, relator asserts

---

2. The master commissioner also determined that respondent had violated DR 2–110(A)(2), but the evidence submitted does not substantiate this in connection with Count Eight.

3. The master commissioner also found a violation of DR 2–110(A)(2) in connection with Count Nine, but the record also does not substantiate this.

that although respondent appeared in response to a subpoena duces tecum, he did not bring with him the records that he was directed to produce. The master commissioner concluded that respondent had thereby violated Gov.Bar R. V(4)(G) (requiring lawyers to cooperate in an investigation of misconduct).

{¶ 13} With respect to Count Eleven, the master commissioner found that respondent had violated Gov.Bar R. VI, based on evidence that respondent had not registered as required for the 2001–2002 biennium.

{¶ 14} In recommending a sanction for respondent's misconduct, the master commissioner found that there were no evident mitigating factors. The master commissioner considered as aggravating circumstances that respondent's disciplinary infractions were similar to those for which his law license was already under indefinite suspension, that this proved a pattern of misconduct, and that respondent had offered little assistance in relator's investigation. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. The master commissioner thus accepted the sanction suggested by relator and recommended that respondent be permanently disbarred. The board adopted the panel's findings of misconduct and the recommendation.[4]

{¶ 15} We agree that respondent committed the cited misconduct and concur in the board's recommendation. "Disbarment is ordinarily the sanction when an attorney's misconduct permeates his practice in the way that respondent's misconduct did in this case." *Richland Cty. Bar Assn. v. Brickley,* 97 Ohio St.3d 285, 2002-Ohio-6416, 779 N.E.2d 750, ¶ 24 (violations included DR 1–102[A][4], 1–102[A][5], 1–102[A][6], 6–101[A][3], 7–101[A][3], and 9–102[B][4] ). See, also, *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993 ("As we have consistently held, the normal sanction for misappropriation of client funds coupled with neglect of client matters is disbarment").

{¶ 16} Here, respondent engaged in a continuous course of neglect and misappropriation without restitution and then failed to cooperate in the investigation of grievances. Disbarment is in order. *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897. Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

4. Upon certification of the board's report, we reviewed the board's records and found correspondence suggesting that respondent might qualify for a mental illness suspension. We consequently remanded this cause to the board for further investigation pursuant to Gov.Bar R. V(7). 99 Ohio St.3d 1522, 2003-Ohio-4161, 792 N.E.2d 1136. The investigation, conducted with respondent's consent, revealed no medical evidence of mental illness.

Jonathan E. Coughlan, Disciplinary Counsel, and Kevin L. Williams, Assistant Disciplinary Counsel, for relator.