COLUMBUS BAR ASSOCIATION *v.* SMITH.

[Cite as *Columbus Bar Assn. v. Smith,*
108 Ohio St.3d 146, 2006-Ohio-413.]

(No. 2005–1529—Submitted September 28, 2005—Decided February 15, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Daniel Scott Smith of Columbus, Ohio, Attorney Registration No. 0008972, was admitted to the Ohio bar in 1985. He is not currently registered as a practicing attorney in Ohio. On April 29, 2005, we imposed an interim remedial suspension under Gov.Bar R. V(5a) after we received substantial, credible evidence demonstrating that respondent had committed a violation of the Code of Professional Responsibility and posed a substantial threat of serious harm to the public. *Columbus Bar Assn. v. Smith*, 105 Ohio St.3d 1521, 2005-Ohio-1972, 826 N.E.2d 843.

{¶ 2} On February 7, 2005, relator, Columbus Bar Association, filed a complaint charging respondent with 13 counts of professional misconduct. Respondent was served with the complaint but did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

{¶ 3} The master commissioner dismissed Counts VIII and XII of the complaint, finding no clear and convincing evidence of the misconduct charged in those counts. See Gov.Bar R. V(6)(H). We therefore review the board's findings and recommendation regarding the remaining allegations of the complaint.

Misconduct

*Count I*

{¶ 4} In September 2003, Teresa Murphy paid respondent a $90 consultation fee and met with him to discuss the recent elimination of her job at the Columbus Health Department. For an additional $200, he agreed to send a letter on her behalf to the department. Respondent, however, never sent the letter, despite repeated calls from Murphy inquiring about the status of her case. Respondent misplaced his notes from his meeting with Murphy and had no recollection of her when she started calling his office. Murphy terminated the representation after

several weeks and requested a refund of her money, which respondent did provide.

{¶ 5} The board found that respondent had violated DR 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter), 7–101(A)(1) (requiring an attorney to seek the client's lawful objective through reasonable means), and 7–101(A)(2) (requiring an attorney to carry out a contract of professional employment).

## Count II

{¶ 6} In 2002, Larry Albanese retained respondent to represent him in an employment-discrimination matter and paid $1,500 to respondent for his services. Respondent filed a complaint in the United States District Court for the Southern District of Ohio on Albanese's behalf. After the defendant filed a motion for summary judgment in 2003, respondent failed to file a memorandum opposing the motion. The court granted the motion and dismissed Albanese's case with prejudice.

{¶ 7} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3) (barring conduct that prejudices or damages a client).

## Count III

{¶ 8} In 2002, Amber Jamesette–Hunt retained respondent to represent her in an employment-discrimination matter and paid $750 to respondent for his services. Respondent did not provide Hunt with a written fee agreement, although he assured her that he would do so. He also neglected to fulfill his promises to send a letter to her former employer and to file a claim on her behalf with the Equal Employment Opportunity Commission ("EEOC"). At one point, respondent told Hunt that her case was "on the fast track," but in fact, the time for filing a claim with the EEOC had lapsed before he took any action on the case. Hunt later requested a refund from respondent, but she did not receive one until several months after she filed a grievance against him.

{¶ 9} The board found that respondent had violated DR 1–102(A)(4) (barring conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 9–102(B)(4) (requiring prompt payment of the client's funds or other property in the lawyer's possession).

### Count IV

{¶ 10} In 2003, JoAnn Penfound retained respondent to represent her in a civil collection matter and paid $750 to respondent for his services. Respondent filed a civil complaint on Penfound's behalf, but he never obtained service of process on the defendant even though Penfound had given him the defendant's latest address. Penfound did not receive a refund of her money until several months after she filed a grievance against respondent. Despite the pending grievance, respondent did not withdraw as Penfound's counsel in the civil collection case.

{¶ 11} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 5–105(A) (requiring an attorney to decline employment that is likely to compromise the attorney's independent judgment on a client's behalf), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 9–102(B)(4).

### Count V

{¶ 12} In 2002, Mehrafrooz Hakhamaneshi retained respondent to represent her in an employment-discrimination matter and paid $1,065 to respondent for his services. Respondent drafted a federal complaint stating a civil rights claim on Hakhamaneshi's behalf, but he failed to file it before the statute of limitations expired in 2004. Hakhamaneshi requested a refund from respondent, but he did not return her money. In addition, after Hakhamaneshi filed a grievance against respondent, he told her that he would represent her at no charge if she would withdraw the grievance.

{¶ 13} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 6–102 (barring efforts by a lawyer to exonerate himself from or limit his liability to a client for malpractice), 7–101(A)(1), 7–101(A)(2), and 9–102(B)(4).

### Count VI

{¶ 14} In May 2003, Carol Basye retained respondent to represent her in a workers' compensation matter and paid $750 to respondent for his services. Respondent never contacted Basye's physician as requested and took no other action on her behalf. Basye terminated the representation in November 2003 and demanded a refund. Respondent did not return Basye's money until several months later.

{¶ 15} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 9–102(B)(4).

### Count VII

{¶ 16} In March 2003, Linda Brandow retained respondent to represent her in a divorce case and paid $1,000 to respondent for his services. She was not

satisfied with his work, however, and retained a new attorney. Thereafter, respondent failed to notify the court that he no longer represented Brandow, and when the court issued a temporary order requiring her to make payments to her husband, the notice was mailed to respondent rather than to Brandow's new attorney. Respondent did not send the notice to Brandow or her new attorney, and Brandow did not learn about the temporary order until her husband filed a motion for contempt against her, charging that she had failed to pay $2,800 in court-ordered spousal support. Brandow incurred additional legal fees defending herself on the contempt charge.

{¶ 17} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

## Count IX

{¶ 18} In December 2000, William W. Boyd retained respondent to represent him in an employment-related matter. Respondent first represented Boyd before the State Personnel Board of Review, then before the Court of Common Pleas of Cuyahoga County, and finally before the Eighth District Court of Appeals. That last court dismissed Boyd's appeal in 2002 because respondent had failed to file the record. Respondent did not notify Boyd that his appeal had been dismissed by the court.

{¶ 19} The board found that respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(1) (prohibiting a lawyer from accepting a case that the lawyer is not competent to handle), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

## Count X

{¶ 20} In October 2002, Tammy L. Scott retained respondent to represent her in a child-support matter and paid respondent $500 for his services. Respondent filed a motion to modify child support on Scott's behalf in December 2002, but failed to timely appear at a court hearing on the motion in April 2003. At that hearing, Scott—who was there alone—felt compelled to sign papers presented to her by opposing counsel, which obligated her ex-husband to pay less child support than she had sought in the motion to modify.

{¶ 21} After respondent arrived late for the hearing, the trial court directed him to prepare an entry journalizing the agreement just signed by the parties. Respondent failed to prepare the entry, however, and the court then dismissed the motion to modify child support. Unaware that her motion had been dismissed, Scott contacted respondent's office to inquire about her case and was told that the entry had in fact been filed.

{¶ 22} With the assistance of opposing counsel, respondent was able to reinstate the motion and prepare the entry that he had agreed to prepare. The trial judge signed the entry eight months after the original agreement had been reached between the parties. As a result of respondent's delay, Scott did not receive timely child-support payments. She terminated the representation in June 2003 and requested the return of her $500. Respondent failed to return the money until almost one year later.

{¶ 23} In January 2003, Scott retained respondent to represent her in a separate domestic-relations matter in which she sought a divorce from her then husband, and she paid respondent an additional $500 for his services. Respondent did not file a complaint for divorce and a request for temporary orders on Scott's behalf until April 2003. When a hearing was set by the trial court on the request for temporary orders, respondent failed to notify Scott and failed to appear himself at the hearing. Scott then terminated this second representation in June 2003, but respondent was still counsel of record for Scott when the missed hearing was rescheduled, and he again failed to appear on Scott's behalf. A third hearing was set for August 2003, and again respondent failed to appear at the scheduled time, although he did arrive after opposing counsel contacted him. Respondent was unprepared at the hearing, however, causing yet another delay in the proceedings.

{¶ 24} In the end, respondent's inaction prompted the trial court to dismiss Scott's request for temporary orders, thereby depriving her of temporary child support throughout the pendency of her divorce proceedings. Scott made numerous requests to respondent for the return of her $500 retainer, but respondent did not return the money until several months later.

{¶ 25} The board found that respondent had violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 6–101(A)(1), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(4).

## Count XI

{¶ 26} In November 2003, John Felkner retained respondent to represent him in an employment-related matter and paid respondent $1,575 for his services. Two months later, respondent sent Felkner a draft complaint for his review and approval. For several months thereafter, Felkner was unable to reach respondent to discuss the proposed complaint.

{¶ 27} Unbeknownst to Felkner and without his approval, respondent had filed the complaint on Felkner's behalf in June 2004. Respondent did not send a copy of the filed complaint or the defendant's answer to Felkner, and when Felkner filed a grievance against respondent in August 2004 for neglecting his case, he

was unaware that either pleading had been filed. Respondent took no further action on Felkner's case after June 2004.

{¶ 28} The board found that respondent had violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), and 7–101(A)(2).

## Count XIII

{¶ 29} During relator's investigation, respondent was served with a subpoena duces tecum directing him to provide certain documents and information. He failed to provide all of the requested information.

{¶ 30} Some of the records that respondent did provide showed that various checks drawn on his client trust account had been returned for insufficient funds, including checks payable to clients. Respondent also testified during a deposition that the checks he wrote from his trust account sometimes bounced because he neglected to deposit clients' checks promptly.

{¶ 31} The board found that respondent had violated DR 9–102(B)(2) (requiring an attorney to put a client's funds in a place of safekeeping), 9–102(B)(3) (requiring a lawyer to maintain complete records and appropriate accounts), and 9–102(B)(4). The board also found that respondent's failure to provide all records sought by relator in connection with the investigation of the allegations in Counts III, IV, V, VI, VII, IX, and XIII constituted a violation of Gov.Bar R. (V)(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

## Sanction

{¶ 32} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongfulness of his actions, and caused harm to vulnerable clients. BCGD Proc.Reg. 10(B)(1)(c), (d), (e), (g), and (h). The board also noted that relator had received 35 additional grievances against respondent since the original complaint was filed.

{¶ 33} In considering mitigating factors, the board acknowledged respondent's testimony that he suffered from depression. Although respondent provided no documentation of his diagnosis or treatment, relator evidently confirmed that respondent had signed a five-year recovery contract with the Ohio Lawyers Assistance Program in April 2005. The board also found that respondent had provided restitution to some of his clients, which is a mitigating factor under

BCGD Proc.Reg. 10(B)(2)(c). Respondent returned $300 to Teresa Murphy (Count I), $750 to JoAnn Penfound (Count IV), $750 to Carol Basye (Count VI), and $1,000 to Tammy Scott (Count X).

{¶ 34} Relator recommended that respondent be permanently disbarred, and the master commissioner and the board agreed with that recommendation.

{¶ 35} We find that respondent has violated all of the provisions cited in the board's report, and we also agree that permanent disbarment is the appropriate sanction. "Disbarment is ordinarily the sanction when an attorney's misconduct permeates his practice." *Richland Cty. Bar Assn. v. Brickley,* 97 Ohio St.3d 285, 2002-Ohio-6416, 779 N.E.2d 750, ¶ 24. Time and again, respondent has neglected his clients' interests and ignored their inquiries, causing undue anxiety to persons who trusted him to help them solve legal problems. And in several instances, of course, respondent prejudiced his clients' legal positions through his inaction. His misconduct is a discredit to the profession, and he has demonstrated repeatedly and clearly that he is unwilling or unable to comply with the Code of Professional Responsibility.

{¶ 36} We have imposed a sanction of permanent disbarment in similar cases. See, e.g., *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16 (explaining that the presumptive sanction is disbarment for those attorneys who accept retainers and then fail to carry out contracts of employment); *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (an attorney's "persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings" compelled his disbarment); *Greene Cty. Bar Assn. v. Fodal,* 100 Ohio St.3d 310, 2003-Ohio-5852, 798 N.E.2d 1082, ¶ 32 (ordering the disbarment of an attorney who "routinely took his clients' money and provided nothing in return").

{¶ 37} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

James P. Botti, Joel H. Mirman, and Fred Thomas; Bruce A. Campbell, Bar Counsel, and Jill M. Snitcher McQuain, Assistant Bar Counsel, for relator.

Daniel Scott Smith, pro se.